THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD SEPINOSA, Defendant-Appellant.

Third District   No. 79-86

Opinion filed April 3, 1980.

Robert Agostinelli, Stephen Omelecki, and G. Joseph Weller, all of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a bench trial, defendant Richard Sepinosa was convicted of aggravated battery and sentenced to a term of imprisonment of 1 year

to 1 year and a day. On appeal he contends the State failed to prove him guilty beyond a reasonable doubt.

Evidence at trial established that on September 7, 1977, Donald Mitchell was beaten by a man armed with a pipe in Stateville Penitentiary. The attack occurred near the top of a stairway leading from 2 Gallery to 3 Gallery in Cell House E while Mitchell, accompanied by two friends and fellow inmates, James Wilkinson and Jackie King, was returning to his cell after lunch.

Mitchell testified that when he approached the top of the stairway, he looked up to see a man swinging a pipe at him. He threw up his arms to protect himself, was hit on the head and arm, and then turned to run down the stairs. He decided against that course of action when he saw a man armed with a club at the bottom of the stairs. Mitchell turned back, fell forward into the man with the pipe, and was hit three more times. He grabbed the pipe from his assailant who then fled down a stairway to the side of the one upon which the attack occurred. Mitchell testified that the attack lasted about 20 or 30 seconds.

James Wilkinson testified that he was walking behind Mitchell as the two of them approached the top of the stairway, and not noticing Mitchell stop, he almost walked into him. Wilkinson looked up, saw the man strike Mitchell with the pipe, and hurried to the bottom of the stairway from which point he saw the assailant run down the other stairway and into 2 Gallery.

Jackie King testified that he was walking up the stairway to the left of the one Mitchell and Wilkinson walked up. He saw the man with the pipe at the top of the stairway to his right and shouted a warning to Mitchell. King stated that after Mitchell gained control of the pipe, the assailant ran down the stairway King was on, kicking King's arms as he went by because they were blocking the stairway. King saw the assailant run down 2 Gallery to Cell 234 and informed Mitchell of this fact.

Sometime after the incident occurred, Mitchell described the assailant to Stateville internal affairs investigator Donald Samuels as Mexican or Spanish. Mitchell did not mention that the man wore glasses or had any unusual facial characteristics. Samuels showed Mitchell three arrays of 46 photographs each, telling him to set aside the photos of anybody who resembled his attacker. Mitchell set aside the photographs of David Meyers and defendant and after studying them a few minutes, identified defendant as his assailant. The parties stipulated that Meyers was assigned to Cell 234 at the time of the incident. The photograph of defendant revealed that he wore glasses, and that his right eye was almost completely white. On another occasion Wilkinson met with Samuels and told him the assailant was of Spanish descent. From the third array shown to Mitchell, Wilkinson first selected the pictures of defendant and an

unidentified inmate, and upon considering the photographs for a few minutes, he identified defendant as the assailant. King went through a similar procedure. He told Samuels he got a good look at the assailant when that person ran by him on the stairway. He described the man as of Spanish descent and not too tall. From an array of 48 photographs, including one of David Meyers, King identified defendant as the assailant. Mitchell, Wilkinson, and King all testified that they had not seen defendant prior to the attack, and all three identified defendant at trial as the assailant.

Defendant testified that he did not hit Mitchell with the pipe. He said that about the time lunch was brought in, he went to the prison hospital. He had to wait an hour to see Dr. Venckus who then prescribed certain medications for him. Defendant stated that, while he was at the hospital, he saw Mitchell come in holding a rag to his bloodied face and head. From the hospital, defendant went to the pharmacy where he waited an hour to have his prescriptions filled. Two prescriptions filled for defendant on the date of the incident were admitted into evidence. Defendant testified that he did not go on regular sick call, but that Lieutenant Albert King gave him permission to go to the hospital. Dr. Venckus testified that according to his records, he saw defendant on the date in question.

In rebuttal Lieutenant Albert King testified that to go on regular sick call, a prisoner would line up in a "sick-call line" either after breakfast or after lunch. He said that if a prisoner does not go on regular sick call, he may not go to the prison hospital without authorization from a lieutenant. He said that he did not give defendant permission to go to the hospital on the date in question.

■■ In connection with his argument that he was not proved guilty beyond a reasonable doubt, defendant acknowledges that positive identification of the defendant by a single witness who had ample opportunity to observe is sufficient to support a conviction. (*People v. Vriner* (1978), 74 Ill. 2d 329, 343, 385 N.E.2d 671, 677, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) However, citing *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232, he contends that the identifications of him were doubtful, vague, and uncertain, that the three eyewitnesses did not have an adequate opportunity to observe the assailant, that his evidence of alibi was virtually uncontradicted, and that all of the above factors, considered in light of the evidence tending to show that David Meyers committed the offense, raise a reasonable doubt of his guilt.

■■■ We disagree. It is true that none of the three eyewitnesses indicated in the description they gave to Samuels that the assailant wore glasses or had a right eye that was almost completely white. However, as this court

stated in *People v. Mays* (1976), 38 Ill. App. 3d 182, 184, 347 N.E.2d 235, 237:

> "While it is true that failure of a witness to include a certain distinctive physical characteristic in an original description of the offender may affect the credibility of the description [citation], the important factor is the ability of the witness to make a positive identification after having had an adequate opportunity to view the offender at the time of the crime."

Where a witness makes such an identification, the discrepancies between the original description and the defendant's appearance are to be evaluated by the trier of fact. (*Mays.*) See *People v. Miller* (1964), 30 Ill. 2d 10, 195 N.E.2d 694.

■ Here the identification of defendant as the assailant was positive, not doubtful, vague, and uncertain. Although both Mitchell and Wilkinson picked two photographs from the array and considered them for a few minutes before choosing that of defendant, they both identified defendant at trial without expressing any uncertainty on the matter. More importantly, King, who had an excellent opportunity to observe the assailant running by him on the stairway, identified defendant at the photographic lineup without any uncertainty. King also identified defendant as the assailant at trial without hesitation. Furthermore, all three eyewitnesses had an adequate opportunity to observe the assailant. Mitchell grappled with the man for 20 or 30 seconds, and King watched him run by on the stairway. Wilkinson saw the man beating Mitchell with the pipe and running into 2 Gallery. Although the witnesses did not observe the offender for an extended period of time, there is no indication that the lighting was bad or conditions otherwise inconducive to observation.

The evidence of alibi is not as persuasive as defendant contends. Although Dr. Venckus testified that his records indicated that he saw defendant on the date in question, the records did not show the time of day of the consultation, and although defendant testified that he did not line up for regular sick call after breakfast or after lunch, but rather was given permission by Lieutenant King to go to the hospital when lunch was brought in, Lieutenant King denied giving defendant such permission.

Finally, we note that the evidence tending to show that David Meyers committed the offense was not particularly convincing. Jackie King testified that he saw the assailant go into Cell 234 immediately after the incident, and the parties stipulated that David Meyer was assigned to that cell at that time. However, no evidence was presented to show that only a person assigned to a particular cell could enter it, and apparently nobody checked to see who, in fact, was in Cell 234 after the beating. And although Mitchell picked both defendant's and Meyer's photographs

from the array, after comparing them, he positively identified defendant as the assailant. Moreover, Jackie King did not set Meyer's photograph aside even though it was in the array he was shown.

A reviewing court should not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) In the instant case the evidence identifying defendant as the assailant, despite the evidence tending to show that Meyers committed the offense and despite the alibi evidence produced, is not so weak as to raise a reasonable doubt of guilt.

For the reasons stated above, the conviction and sentence entered by the Circuit Court of Will County are affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.