THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARL THOMAS, Defendant-Appellant.

First District (5th Division)    No. 82—2947

Opinion filed February 10, 1984.

Steven Clark and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of aggravated battery and sentenced to a term of four years. On appeal, he contends that (1) he was not proved guilty beyond a reasonable doubt; (2) his sixth amendment right to cross-examine State witnesses was erroneously restricted; and (3) he was denied a fair trial by improper prosecutorial comments.

At trial, complainant testified that she was the office broker at

135 South LaSalle Street and, at about 2:45 p.m., she went to Suite 1230 to prepare it for a prospective tenant. Although it was daylight, as was her habit when showing an office she turned on all the lights, including one directly in front of the storeroom. When she reached in to turn on the storeroom light, someone from within grabbed her right wrist and tried to pull her inside. When she resisted, her assailant pulled a carpet knife about six or seven inches long from his belt and slashed at her head. She pulled back into the hallway, but the man held onto her wrist and slashed at her repeatedly. In the struggle, she fell on top of him, causing his grip to release, and she fled to the suite next door. The attack lasted at least two minutes, throughout which she maintained face-to-face contact with the attacker, whom she described as a well-groomed male Negro, about 5 feet 11 inches tall, with a moustache and beard, high cheekbones, almond-shaped eyes, wearing a blue shirt and a utility belt. When the police arrived, she gave them a description of the offender and was then transported to the hospital, where she was treated for multiple lacerations. Later that day, she identified defendant as her assailant from a police lineup in which five men were seated behind an upturned table so that only their heads were visible. She also identified defendant in court.

Officer Weaver testified that he and another officer responded to a call concerning a stabbing at 135 South LaSalle Street, and as they exited the elevator on the 12th floor, he observed defendant walking toward them. When defendant saw them, he abruptly turned down another hallway. They continued to Suite 1230 where complainant, who was very bloody, described her attacker as a "black guy with a beard, a blue shirt and a work belt." They immediately returned to the hall in pursuit of defendant, who matched that description, and saw him running toward a stairway door. They ordered him to stop, but he ran down the stairwell where they subsequently arrested and handcuffed him. Their search revealed that one of the two pouches on his work belt contained a pen, but the other was empty with an open snap. On cross-examination, Weaver stated that defendant did not run away when he and the other officer left the elevator, and that he did not see any blood on defendant or on his clothing. He denied recovering a small pocket knife from defendant, but acknowledged that the empty pouch on defendant's belt would not snap closed when a knife identified by complainant as having been used by defendant in the attack was inserted in it.

Laurie McConaughy testified that she was working that afternoon at her desk when she saw defendant, who was wearing running shorts and a blue vest, walk past her office from the direction of Suite 1230.

He stopped, looked in, and then turned down the hallway toward the elevators.

Nancy Martin, an assistant State's Attorney, testified that on the evening of the offense she was present at a lineup in which five black men were seated behind a table which had been turned on its side. She further stated, without objection, that when the lights were turned on, but before the actual lineup began, complainant, who was viewing the lineup through a one-way mirror in an adjoining room, said, "It is number four [defendant]. I would never forget that face. I would never forget those eyes."

Officer Roberts testified that after he and his partner went to Northwestern Hospital and obtained a description of the offender from complainant, he arranged a lineup in which defendant and four other men with similar features were seated behind a table so as to obstruct any view of their clothing. He then heard a knock, indicating that he should begin the lineup, but before he could instruct the men to turn their heads to provide a profile view, his partner—who had been in the adjoining room with complainant—informed him that an identification had been made.

The parties stipulated that complainant had been treated for 22 superficial lacerations and that no fingerprints suitable for comparison were obtained at the scene or on the knife found there.

Ira Block testified for the defense that he was the dispatcher for Fast Messenger Service, where defendant had been employed as a messenger for about four months preceding the day of the offense, and during that period defendant had a reputation for peacefulness and lack of violence. He further stated that although his company had no regular customers at 135 South LaSalle Street, defendant had been sent there to deliver packages twice on the day of the occurrence—first at 11:42 a.m. and again at 2:13 p.m., and that the second package was not delivered but was picked up from the police lockup later that evening.

Defendant testified that shortly after 2 p.m. on the day in question, he called his office and received three messenger assignments, and at about 3 p.m., after making two other deliveries, he arrived at 135 South LaSalle Street, where he consulted the building directory, which indicated that Investment Dealers Digest (I.D.D.), the company to which he was delivering the package, was located on the 12th floor. He did not recall looking on the directory for a specific room number nor did the package indicate such a number. Once on the 12th floor, he walked up and down the corridors looking for I.D.D. and passed Room 1225 where a person inside looked up at him. As he approached

Room 1230, he realized it was not his destination and turned back up the hallway, when two police officers "came charging from the elevator" and ran past him in the direction from which he had just come. He turned another corner and "walking at a brisk pace" continued to look for I.D.D. When he reached the end of that corridor, the police came running toward him and ordered him to stop, which he did. Officer Weaver then knocked the package out from under his arm, pushed him up against the wall, frisked him, and removed a small pocket knife from the pouch on his belt. As the police led him down the crowded hallway toward the elevators, a stretcher was wheeled up alongside of him and, when it stopped, Officer Weaver grabbed him and lowered him slightly toward the victim. Someone then asked, "Is this the guy?" and although she looked up, she did not respond. He also stated that he did not attack the complainant.

The parties then stipulated that a letter addressed to I.D.D. was returned to Fast Messenger Service by the Chicago Police Department on the evening of the offense; that Suite 1230 remained vacant for at least one week thereafter; that a microanalysis of sweat pants taken from defendant revealed no recent damage or blood; and that the police dispatch records indicated that the call concerning the incident was received at 2:53 p.m.

On rebuttal, William Bowden, former manager of I.D.D., testified that the firm had been located in Room 1216 for about 10 years and was so designated on the building directory under both "I.D.D." and "Investment Dealers Digest"; and that both those names, as well as the room number, were also printed on the office door.

Beatrice Wilson then testified that on the day in question, she worked as the building nurse and that she accompanied complainant from the 12th floor to the ambulance. She never saw defendant or any other male Negro being placed in view of the stretcher, anywhere in the hallway, or in the vicinity of the ambulance. She said that she had not seen defendant in the hallway or near the elevators, although there was a "normal amount" of people in the lobby. She also stated that complainant was covered with blood but was conscious and able to carry on a conversation.

Opinion

Defendant first contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt. He initially argues that the omission in complainant's original description of her assailant of any reference to his gym shorts, a distinctive item of clothing in a Loop office building and one which she could not have failed to notice dur-

ing the struggle, undermines the certainty of her subsequent identification of him.

While it is true that the failure of the identifying witness to include a notable physical feature or some distinctive attire in her initial description of the offender may affect the credibility of that description (*People v. King* (1973), 10 Ill. App. 3d 652, 295 N.E.2d 258), precise accuracy therein is not necessary (*People v. Ramsey* (1979), 77 Ill. App. 3d 294, 395 N.E.2d 973); rather, the central concern is "the ability of the witness to make a positive identification after having had an adequate opportunity to view the offender at the time of the crime" (*People v. Mays* (1976), 38 Ill. App. 3d 182, 184, 347 N.E.2d 235, 237), and where such an identification is made, discrepancies between the appearance of the assailant and the original description of him do not destroy its validity (*People v. Watkins* (1981), 98 Ill. App. 3d 889, 424 N.E.2d 701) or raise a reasonable doubt of defendant's guilt where the witness had sufficient opportunity to observe the assailant (*People v. Jackson* (1979), 72 Ill. App. 3d 231, 390 N.E.2d 47), but go only to the weight of the identification testimony which is to be evaluated by the trier of fact (*People v. Sepinosa* (1980), 82 Ill. App. 3d 763, 403 N.E.2d 99).

■ Here, complainant testified that the window blinds were open, the sun was shining, and in addition, she turned on the lights—all of which caused the lighting condition in the suite to be very bright; that when she had resisted being pulled in the storeroom, she was able to draw her assailant into the lighted hallway; and that throughout the attack, which lasted at least two minutes, her eyes were on his face. Thus, it is our view that the circumstances and duration of the attack provided complainant with ample opportunity to view her attacker during the crime, and her failure to include in her description to the police that he was wearing gym shorts is accounted for by the fact that she was looking at his face during most of the attack. Furthermore, we cannot determine from the record whether she observed that her attacker was wearing shorts, since she was asked no questions in that regard.

■ Defendant also urges, however, that complainant's lineup and in-court identifications of him were unreliable because they may have been the product of a suggestive, on-the-scene confrontation where, according to defendant, as complainant was being transported to the elevators the police stopped the stretcher, placed him in her view, and asked her, "Is this the guy?" We disagree. The burden of proving an impermissible suggestive pretrial confrontation is on the defendant, who must also demonstrate that a substantial likelihood of misidentifi-

cation resulted therefrom. (*People v. Rosa* (1981), 93 Ill. App. 3d 1010, 418 N.E.2d 124, *cert. denied* (1982), 455 U.S. 952, 71 L. Ed. 2d 668, 102 S. Ct. 1457.) Here, defendant's testimony regarding the occurrence of this confrontation was contradicted by complainant and Wilson, each of whom stated that no such confrontation occurred, and by Officer Weaver, who denied conducting such a showup, and it is our view that the jury, whose function it is to resolve conflicts in testimony (*People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199) was justified in believing there was no such confrontation.

Furthermore, reliability of identification testimony is dependent upon the totality of circumstances (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513), which include: the opportunity of the witness to view the criminal at the time of the crime, her degree of attention, the accuracy of her prior description, the level of certainty demonstrated at the identification, and the amount of time between the crime and the identification confrontation (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243). As noted above, the circumstances and duration of the crime permitted complainant sufficient opportunity to observe her assailant, on whose face she focused her attention at close range and under good lighting conditions throughout the attack, and her original description—while not as detailed as that which she gave at trial—was in no part inaccurate. Additionally, her identification of defendant in the lineup, which was conducted within a few hours of the offense and at which precautions were taken to obstruct her view of any distinguishing clothing, was, according to Assistant State's Attorney Martin, positive and swift, having been made even before Officer Roberts initiated routine lineup procedures. Thus, even assuming *arguendo*, that an on-the-scene showup had occurred, complainant's identifications of defendant, both at the lineup and at trial, had sufficient independent origin to overcome any possible suggestivity from an earlier confrontation and were, therefore, reliable.

■ Defendant, nevertheless, argues that the lineup and in-court identifications were insufficient because they were uncorroborated by other State evidence. Specifically, he emphasizes the absence of any suitable fingerprints at the scene or of any blood on him or on his clothing as facts which raise doubts of his guilt. It is well settled, however, that where the identity of a defendant is at issue, positive identification by a single, credible witness is sufficient to convict (*People v. Sepinosa* (1980), 82 Ill. App. 3d 763, 403 N.E.2d 99) provided the witness " ' "*** viewed the accused under such circumstances as

would permit a positive identification to be made ***" ' " (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 226, 367 N.E.2d 666, 668), and having concluded above that such circumstances existed here, we reject defendant's argument that corroboration was required.

Similarly, we are unpersuaded by defendant's argument that the time between which the crime was reported to the police and their arrival significantly weakens the State's case, particularly since at once he postulates that the interval was both long enough to allow the real perpetrator to escape and too brief to permit him to clean himself of any blood from the attack. However, the jury was adequately apprised of all relevant time factors in this case, and we cannot fault their apparent refusal to accept either of defendant's hypotheses.

■ Defendant's final assertion with regard to the issue of reasonable doubt concerns conflicts in testimony as to the circumstances of his arrest. He maintains, as he did at trial, that contrary to the testimony of Officer Weaver, he did not attempt to escape down the stairwell when the police ordered him to stop nor was he apprehended, handcuffed, or searched therein, and that his testimony was corroborated by Officer Pennington, who stated that he saw Officer Weaver handcuffing defendant in the 12th floor hallway. Initially, we note that the testimony of Officer Pennington conflicts with that of Officer Weaver only as to where defendant was handcuffed; otherwise, it neither contradicts Weaver's statement that defendant fled nor corroborates defendant's claim that he obeyed the police order to stop. Moreover, conflicts in the testimony of prosecution witnesses affect only the credibility thereof (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029), and in assessing the plausibility of the testimony presented, the jury is not required to believe defendant's version of events (*People v. Crespo* (1983), 118 Ill. App. 3d 815, 455 N.E.2d 854), particularly where the discrepancies are slight (*People v. Zolidis* (1983), 115 Ill. App. 3d 669, 450 N.E.2d 1290) or where the conflicting testimony was not relied upon by the State for any substantial portion of its case (see *People v. McNeal* (1980), 88 Ill. App. 3d 20, 410 N.E.2d 480). In the instant case, it appears that the victim's identifications of defendant and his undisputed presence at the scene of the offense were the strength of the State's case, and it is our view that the conflict complained of provides no support for defendant's contention that there was a reasonable doubt of his guilt.

■ Defendant next contends that the trial court erroneously restricted his right to cross-examine State witnesses Wilson and Weaver. He posits that there was a close question as to identification and, consequently, he should have been allowed to cross-examine (a)

Wilson as to the meaning of her response, "I glanced at someone" when the prosecutor asked her whether she had seen defendant in the hall after the crime and (b) Weaver as to whether he had spoken with the prosecuting attorney prior to testifying. The State responds that by failing to raise these allegations in his post-trial motion, defendant has waived any error thereto. We note that, as a general rule, a written post-trial motion must set forth with adequate specificity the errors relied upon for reversal (*People v. Lawson* (1980), 86 Ill. App. 3d 376, 407 N.E.2d 899) in order to afford the trial court the opportunity to reconsider the propriety of its rulings and, if warranted, order a new trial (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739); and while Supreme Court Rule 615(a) provides an exception to the waiver doctrine where "[p]lain errors or defects affecting substantial rights" are involved (87 Ill. 2d R. 615(a)), that exception is a limited one and should be invoked only where the evidence is so closely balanced that the verdict of the jury may have resulted from the error, or where it was so prejudicial as to deny defendant a fair trial (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233). An examination of defendant's post-trial motion reveals no specific reference to either of the assignments of error herein presented, and thus it is our view that defendant has failed to properly preserve these issues for review. Moreover, it is also our belief that the evidence of guilt was not closely balanced, and we will therefore not invoke the plain error exception.

Defendant also contends that he was denied a fair trial by the cumulative effect of improper comments by the prosecutors in closing and rebuttal arguments. He maintains that these remarks misstated the evidence and shifted the burden of proof to the defense. While every defendant is entitled to a fair trial, free from improper comments (*People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68), including remarks which are unsupported by or are unreasonable inferences from the evidence (*People v. Wallace* (1981), 100 Ill. App. 3d 424, 426 N.E.2d 1017) as well as those which draw attention to defendant's failure to call witnesses (*People v. Franklin* (1981), 93 Ill. App. 3d 986, 418 N.E.2d 155) or otherwise attempt to shift the burden of proof to the defendant (*People v. Smith* (1982), 111 Ill. App. 3d 895, 444 N.E.2d 801), such remarks do not warrant reversal unless they result in substantial prejudice to defendant (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200), which is determined by examining whether the remarks were such a material factor in conviction that the jury would have reached a contrary verdict had they not been made (*People v. Witted*). Furthermore, defendant may not assert such

prejudice where the comments complained of were provoked or invited by the arguments of his counsel (*People v. Braxton* (1980), 81 Ill. App. 3d 808, 401 N.E.2d 1062), and the failure to make a timely objection at trial generally constitutes a waiver of any improprieties in closing argument (*People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051), inasmuch as the absence of an objection deprives the trial court of the opportunity to prevent or cure any error by instructing the jury to disregard the objectionable remarks (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739).

Defendant cites two instances of alleged evidential distortion in the State's argument, the first of which occurred when the prosecutor referred to Ira Block as "the witness who said the defendant had a good reputation, but [it] had never been discussed until after this incident." He maintains that this was an incomplete and thus inaccurate representation of the testimony of Block, who, in fact, stated that he was familiar with defendant's reputation for peacefulness and lack of violence and that there was "never any difficulty that I was aware of during the entire time he [defendant] was with Fast Messenger Service." The second instance involved comments indicating defendant had lied concerning the lack of a room number on the building directory. Defendant argues that the directory did not list the room number of I.D.D., but rather, that he had not noticed it and thus that the State's characterization of his testimony as a lie was prejudicially improper.

■ Initially, we note that our review of the record reveals that defense counsel made no objection to either of these comments and has thus waived any error which might have resulted therefrom. Furthermore, assuming there was no waiver, we nevertheless disagree with his contention that these statements lacked record support. Although Block did testify on direct examination that defendant's general reputation for peacefulness and lack of violence was good, he admitted on cross-examination that prior to defendant's arrest, he had not specifically discussed defendant's lack of violence or peacefulness with other persons.

With respect to the second comment, the record discloses that on his direct examination, when asked by his attorney, "What did the directory tell you?" defendant responded, "The directory told me what floor to go to." Later, on cross-examination, he stated that when he looked at the directory "all I seen was twelve, and I was off to the floor." Thus, his testimony indicated that there was no room number on the directory, and since it was crucial to his defense that the jury believe that he was looking for the I.D.D. office because he did not

know its room number, it is our view that the second comment was within the proper scope of argument.

We turn then to defendant's assertion that two comments made by the prosecutor in rebuttal argument shifted the burden of proof to the defense. In the first, the prosecutor made the following comment concerning complainant:

"Did you hear anything about the description provided that was different. We have what we call in this business impeachment of a prior inconsistent statement. And you better believe if she ever told anybody anything different you would have heard it because that would have been not only allowed but it is what they would have done. You know that she was consistent throughout in her description of the man that attacked her."

Defendant posits that this statement was designed to call attention to his failure to present evidence challenging complainant's identification of him as the offender. We once again note that no objection was made to this statement, and therefore any error which might have resulted therefrom must be deemed waived. Moreover, we agree with the State's position that this was a proper comment on the consistency of her description and the credibility of her testimony, and that it was invited by defense counsel's argument that she identified the wrong man.

Defendant also urges, however, that the prosecutor improperly commented on his failure to call the persons who had signed for packages defendant had delivered that afternoon. In considering the propriety of this remark, we note that defense counsel devoted a substantial portion of his closing argument to the time elements of this case and to his position that defendant lacked sufficient time to commit the offense. In support thereof, he relied on police department dispatch records, to which the State stipulated, stating that the crime was reported at 2:53 p.m. and on defendant's delivery tickets which indicated that he had completed his last delivery in another building at 2:47 p.m. In challenging the reliability of the delivery slips, the prosecutor, after pointing out that the times indicated thereon were in defendant's handwriting, made the comment complained of that the persons who received the packages were not heard from. It is our view that the comment was a proper response to the emphasis placed by defendant on the time shown on his delivery slips.

■ Finally, defendant contends that inadmissible hearsay testimony was allowed which, although not objected to at trial, was so prejudicial that its admission constituted plain error. Assistant State's Attorney Martin, in response to the prosecutor's question concerning

the lineup identification of defendant by the victim, answered that when the room in which the participants were seated was illuminated, complainant immediately stated, "It is number four [defendant]. I would never forget that face. I would never forget those eyes." As noted above, invocation of the plain error exception to the waiver doctrine occurs only where the evidence is so closely balanced that the error was such a material factor in defendant's conviction that, without it, a contrary verdict would likely have been reached (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233) or where defendant's rights were substantially impaired (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739).

Here, complainant had already testified to her lineup identification of defendant and had also identified him in court when Martin testified, and in view thereof and because of our belief as expressed above, that the evidence was not closely balanced, we see no basis to invoke the plain error exception.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.