THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILBUR J. BROOKS, Defendant-Appellant.

Third District   No. 3—82—0675

Opinion filed May 10, 1984.—Rehearing denied June 14, 1984.

Nicholas J. Bertschy, of Peoria, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Vicki R. Wright, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

The defendant, Wilbur Brooks, appeals from his conviction of armed robbery, following a jury trial in the circuit court of Peoria County, and from his sentence of 24 years' imprisonment.

The following issues are before us: (1) whether the defendant was denied his right of confrontation under the sixth and fourteenth amendments by the trial court's refusal to permit the defendant to test the ability of the State's star witness to identify him in court by showing her a series of photographs of young black males; (2) whether the trial court erred in denying defendant's motion to suppress two in-court identifications of the defendant; (3) whether the court erred in denying defendant's motion for mistrial; (4) whether the State's evidence was sufficient to prove that a dangerous weapon was used in the commission of the robbery; (5) whether the trial court erred in giving Illinois Pattern Jury Instruction (IPI), Criminal, No. 2.04 (2d ed. 1981), tendered by codefendant Brown over defendant Brooks' objection; (6) whether the State's evidence was sufficient to prove the defendant guilty of armed robbery beyond a reasonable doubt; and (7) whether the defendant's 24-year sentence of imprisonment constitutes an abuse of discretion. We affirm.

Louise DeBates was the clerk at Stafford's Dairy Store in the early afternoon of April 12, 1982. Around 1:40 p.m., a man unfamiliar to her wearing a dark stocking cap and holding a handkerchief to his face entered the store and announced, "This is a holdup." He held a small gun in his hand and ordered a small boy customer to lie on the floor. DeBates handed the robber about $100 from the cash register and, upon further demand, $3 from her own purse. The man then told her to pull the telephone wires out of the wall. When she was unable to do so, he yanked the wires out himself and then ordered DeBates and the boy to go to the back room of the store. The robber had dropped the handkerchief, exposing his face, during the confrontation with DeBates. The robber disappeared and DeBates promptly summoned the police by telephone from a neighboring hardware store.

When the police arrived, DeBates described the man as black, tall,

thin, about 18 to 20 years old, with short hair and no beard. During the four to five minutes that the robbery had been in progress, De-Bates stood within three feet of the perpetrator. DeBates' on-the-scene description was included in the investigating officer's report and subsequently introduced into evidence at defendant's trial.

On April 14, 1982, DeBates, along with two other occurrence witnesses, Andre Edwards and Gail Sturdivant, attended a lineup at the Peoria city police station. Five young black males participated in the lineup, and DeBates selected defendant Brooks as the man who had robbed her. The defendant had shoulder-length hair and was viewed by DeBates both wearing a hat and without the hat during the lineup. On motion of the defendant, however, all testimony concerning the lineup identification was ordered suppressed on grounds that the defendant had requested the assistance of counsel prior to the lineup procedure, but was still without legal representation when the lineup was conducted.

Three months later, testifying for the State at defendant's trial, DeBates again positively identified Brooks as the person who had held her up. Brooks was bearded and had short hair in court. From the witness stand, DeBates said that the defendant had had long hair that stuck out from under his cap on the date of the offense and was about 22 or 23 years old. On cross-examination, she stated that she did not recall having told the investigating officer at the scene of the robbery that the robber was about 18 years old and had short hair. Defense counsel sought to introduce a group exhibit of 18 color photographs of young black males in various casual poses to impeach DeBates' in-court identification. The defendant's photograph was not included in the proposed array. The State's objection to the introduction of the group exhibit was sustained on grounds that the potential prejudice that could result from the demonstration outweighed the potential relevance of the impeachment tactic. The exhibit was, however, admitted into the record for purposes of preserving the issue on appeal.

In redirect examination, the prosecutor asked DeBates about the defendant's head and facial hair at the time of the offense as compared to their appearance at trial. She reiterated that he was unbearded during the robbery and then was asked, "Now, did you have [sic] see his hair other than underneath the cap?" DeBates responded "In the line-up?" and drew an immediate objection from defense counsel and a motion for mistrial. The motion was denied on grounds that the witness' response was inadvertent and was not the product of any misconduct on the part of the prosecution. The jury was soundly admonished to disregard DeBates' answer.

■ The issue of whether the defendant was denied his constitutional right of confrontation by the trial court's evidentiary ruling on the proposed group exhibit of photographs, while novel, does not give us pause to consider the violation of any profound constitutional rights of the defendant. (*Cf. Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (introduction at trial of a transcript of defendant's preliminary hearing, at which defendant lacked legal counsel to cross-examine the State's witnesses, violated defendant's sixth and fourteenth amendment right to be confronted with witnesses against him).) Although defense counsel's cross-examination in this case was limited in one respect, we do not find the limitation of constitutional dimension since the balance of defense counsel's cross-examination of DeBates amply tested the witness' ability to identify the defendant as the robber. The defendant's constitutional right of confrontation was not impermissibly restricted by the trial court's ruling. Indeed, as in most evidentiary matters, the appropriate inquiry revolves around the exercise of the trial court's discretion.

If the trial court's ruling had constituted an abuse of discretion to the substantial prejudice of the defendant, such that the result of the trial might have been affected by the ruling, then, of course, a reversal would be warranted. (*People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914.) Such is not the case here. The photo array of several young black males did not include any of the defendant. Obviously, defense counsel's tactic was to trick DeBates into testifying that one or more of the young men resembled the robber. While such a tactic, if successful, might have bolstered the defendant's case on the issue of DeBates' credibility we must agree with the trial court that the potential for jury misuse of the array, coupled with its borderline relevancy, weighed against permitting defense counsel to conduct the proposed demonstration. In sum, we find neither a constitutional violation nor an abuse of discretion in the trial court's ruling denying use of the in-court photo display under the circumstances here presented.

■ In defendant's second issue he contends that the trial court should have suppressed in-court identifications of defendant Brooks by DeBates and another occurrence witness, Andre Edwards, because such identifications were tainted by the witnesses' pretrial identifications at the police station lineup when Brooks was without legal representation. The issue was thoroughly considered by the trial court and was, in our opinion, correctly decided. Louise DeBates had had an opportunity to observe the defendant's appearance for four or five minutes in a well-lit commercial building under circumstances which

would have impressed his image in her mind independent of her later observance of him at the police station lineup. Although defendant had urged suppression of the police station lineup identification on grounds that it was unfairly suggestive, the trial court had properly rejected that theory and entered its suppression order solely on the basis of the sixth amendment right-to-counsel violation. We are satisfied that DeBates' in-court identification of the defendant had its origin from her observations at the robbery scene, rather than at the police lineup, as found by the trial court, and should not have been suppressed. See *People v. Thomas* (1984), 121 Ill. App. 3d 883.

Similarly, we find no error in the trial court's ruling respecting the in-court identification of Brooks by Andre Edwards. Edwards resided in the neighborhood of the Stafford Dairy Store and observed from his living room window the suspicious activity of two black men driving a blue car. He saw the car park twice near the dairy store, and both times the passenger got out, took a walk, and returned. The second time, the passenger "jogged" back to the waiting car and Edwards noted a blue workman's handkerchief hanging out of the man's back pocket. Edwards took note of the car's license plate number and promptly reported his observations of the men, their activities, and the vehicle they drove to the police officer investigating the dairy store robbery. At the suppressed pretrial police station lineup, Edwards identified defendant Brooks as the passenger he had observed on the date of the robbery.

The details supplied by Edwards in describing what he saw from his living room window indicate his attentiveness to the two men and their activities while he observed them. Under these circumstances, we hold that the trial court also correctly concluded that Edwards' in-court identification of defendant Brooks as the passenger he had observed was based on origins independent of the lineup viewing and was, therefore, reliable. See *People v. Thomas* (1984), 121 Ill. App. 3d 883.

■ The trial court further committed no error in denying defendant's motion for a mistrial on grounds that DeBates had inadvertently disclosed the fact that she had seen the defendant at a lineup despite the court's suppression of testimony concerning that identification procedure. It is apparent from the record that DeBates' spontaneous response came as a surprise to the prosecution. The defendant's objection was prompt, and it was sustained. The trial court cured the error to the extent possible with a brief but sound admonishment to the jury to disregard DeBates' unfortunate remark. The drastic remedy of a mistrial was not warranted on these facts.

■ Next, we find that the State's evidence was sufficient to prove beyond a reasonable doubt that the defendant used a dangerous weapon, namely a gun, during the robbery. Louise DeBates testified that the defendant wielded a small black gun during his visit to the dairy store. Although she admitted on cross-examination that she was not familiar with firearms, and conceded upon defense counsel's suggestion that the object she had perceived as a weapon may have been a toy pistol, the attempted impeachment did not raise a reasonable doubt in the minds of the jurors that the dangerous weapon element of the charged offense had been proved by the prosecution. (*Cf. People v. Skelton* (1980), 83 Ill. 2d 58, 414 N.E.2d 455 (a plastic toy gun was the "weapon" recovered and introduced into evidence at trial).) Proof of a dangerous weapon may be established on the basis of circumstantial evidence. Although the object in question was not produced at trial, the jury was presented with credible testimony that a handgun had been employed during the robbery. The prosecution was not required to prove that the object was not a toy. (See *People v. Greer* (1977), 53 Ill. App. 3d 675, 368 N.E.2d 996.) In the absence of any evidence to the contrary, we will not disturb the jury's finding that, in fact, a dangerous weapon was used.

■ The defendant's fifth issue challenges the decision of the trial court to give, over defendant Brooks' objection, the instruction cautioning the jury not to consider a defendant's failure to testify in reaching a verdict. (IPI Criminal No. 2.04 (2d ed. 1981).) The instruction was tendered by codefendant Brown. The defendant had moved for a severance on May 7, 1982, but failed to suggest that the two defendants were in disagreement over the jury instruction issue on that occasion. Instead, the matter was raised for the first time on July 15, 1982, at the conference on jury instructions following presentation of testimony by the defendants' witnesses. Neither defendant had testified on his own behalf.

Our supreme court recently held that the question of giving or refusing to give a properly requested instruction on a defendant's failure to testify is of constitutional dimension. (*People v. Ramirez* (1983), 98 Ill. 2d 439, 457 N.E.2d 31.) Failure to give a properly requested IPI Criminal No. 2.04 instruction is reversible error. Conversely, where, as here, a defendant objects to the giving of the properly tendered instruction by his codefendant in a joint trial, we find no constitutional infirmity so long as the trial court gives the tendered instruction.

We are not called upon to determine whether conflicting defense theories on the advisability of giving the jury instruction at issue, if

presented prior to trial, might have required granting defendants' motions for severance. Such facts are not before us, and we express no opinion on the hypothetical question. We hold only that under the circumstances here presented the trial court committed no error in granting co-defendant Brown's request to give IPI Criminal No. 2.04 over defendant Brooks' objection.

■ We have reviewed the defendant's final two issues and have considered them in light of the record on appeal, but we find no basis upon which to disturb the trial court's rulings respecting thereto. Suffice it to say, the State's evidence was sufficient to prove the defendant guilty of armed robbery beyond a reasonable doubt, and his 24-year sentence of imprisonment is not excessive.

For the foregoing reasons, we affirm the defendant's conviction and sentence.

Affirmed.

STOUDER, P.J. and SCOTT, J., concur.