STATE of Iowa, Appellee,

v.

**Byron Carter GRIFFIN II, Appellant.**

No. 96–1974.

Supreme Court of Iowa.

March 25, 1998.

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Julie H. Brown, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Raymond Walton, Assistant County Attorney, for appellee.

Considered by LARSON, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

LARSON, Justice.

This defendant, Byron Griffin, was tried with a codefendant for the sexual abuse of a fifteen-year-old girl. Griffin requested an instruction that the jury should draw no inference from the fact that he did not testify. This created a dilemma for the trial court because Griffin's codefendant, who also did not testify, objected to this instruction. The court, relying on *State v. Kimball*, 176 N.W.2d 864, 869 (Iowa 1970), refused Griffin's requested instruction. Based on United States Supreme Court cases postdating *Kimball*, we conclude that it was error to deny Griffin's requested instruction but that it was not reversible error because it was not prejudicial. We affirm.

## I. *Facts.*

Griffin and three other males were arrested for this crime. Griffin and Clarence Williams were tried together as permitted by Iowa Rule of Criminal Procedure 6(4)(b). Neither defendant testified at trial. Griffin requested that the court instruct the jury that they could not infer from his silence any evidence of guilt; his codefendant, Williams, objected. The court denied Griffin's request for the instruction, but it offered to allow Griffin's lawyer to argue to the jury that no inference may be drawn from defendant's failure to testify. Griffin declined. The conviction of Griffin's codefendant was affirmed in *State v. Williams*, 574 N.W.2d 293 (Iowa 1998).

The issue is straightforward: should the no-inference instruction be given when codefendants do not testify and they disagree on whether the court should give the instruction? The rationale for refusing such an instruction is that it unduly emphasizes a defendant's exercise of his Fifth Amendment rights. *See, e.g., Kimball*, 176 N.W.2d at 869. The opposing argument is that a defendant is entitled to have a jury instructed as to his constitutional rights. *See, e.g., Carter v. Kentucky*, 450 U.S. 288, 305, 101 S.Ct. 1112, 1121–22, 67 L.Ed.2d 241, 254 (1981) (court has constitutional obligation to minimize danger of such inference by giving the instruction). Because Griffin argues that his

Fifth Amendment rights were prejudiced, we review the case de novo.

## II. *Analysis.*

█ In 1965 the Supreme Court held that the Fifth Amendment and the Fourteenth Amendment (as applied to the states in *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493–94, 12 L.Ed.2d 653, 659 (1964)), forbid "either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965). *See generally* S.R. Shapiro, Annotation, *Propriety Under* Griffin v. California *and Prejudicial Effect of Unrequested Instruction that No Inferences Against Accused Should Be Drawn from His Failure to Testify*, 18 A.L.R.3d 1335 (1968); 75A Am.Jur.2d *Trial* §§ 577–79 (1991).

In *Kimball* we were concerned that a jury might infer guilt from a failure to testify and that this possibility might actually be exacerbated by a no-inference instruction. We said:

> We must recognize ... that the instruction is a comment on defendant's failure to testify even though it is supposedly for defendant's benefit and is designed to keep the jury from speculating on the reasons for his failure to take the stand and drawing improper inferences therefrom. There are those who believe the instruction is more harmful than helpful and regardless of how favorably to the accused the instruction may be worded it may inadvertently cause the jurors to consider certain adverse inferences which would not otherwise have entered their minds.
>
> Because of the divergent opinions in this sensitive area and as the giving of even a cautionary instruction favorable to defendant may violate the spirit of Griffin v. State of California, supra, we believe it is advisable for us to take a definitive position on this issue. *We now hold that such instruction should not be given in any future trial unless it is requested by defendant, and that it will be considered error if it is given, absent such request, in any*

*trial started after the date this opinion is filed.*

*Kimball,* 176 N.W.2d at 869 (emphasis added). We recently followed *Kimball* in *State v. Atley,* 564 N.W.2d 817, 820–21 (Iowa) (no error in submitting "no inference" instruction to jury because defendant requested it), *cert. denied,* —— U.S. ——, 118 S.Ct. 577, 139 L.Ed.2d 416 (1997).

We have never considered a no-inference instruction issue in a multiple-defendant trial in which the defendants cannot agree on whether the instruction should be given. To resolve the issue, we look to Supreme Court cases that postdated *Kimball.* In one of those cases, the Court said:

> It may be wise for a trial judge not to give such a cautionary ["no inference"] instruction over a defendant's objection. And each State is, of course, free to forbid its trial judges from doing so as a matter of state law. We hold only that the giving of such an instruction over the defendant's objection does not violate the privilege against compulsory self-incrimination guaranteed by the Fifth and Fourteenth Amendments.

*Lakeside v. Oregon,* 435 U.S. 333, 340–41, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319, 326 (1978). So, under *Lakeside,* Griffin's codefendant could not successfully claim an impairment of his federal constitutional rights if the court had given Griffin's requested instruction. But what about the flip side of the coin—a defendant (such as Griffin) who requests such an instruction but is denied it? In this case, the Supreme Court has clearly said that it is error to refuse such an instruction, if it is requested. The Court said:

> [W]e hold that a state trial judge has the *constitutional obligation*, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify [by giving a "no inference" instruction].

*Carter,* 450 U.S. at 305, 101 S.Ct. at 1121–22, 67 L.Ed.2d at 254 (emphasis added).

While *Lakeside* and *Carter* both involved single-defendant trials, we believe that when those cases are considered together they make it clear that, from a federal constitutional standpoint, if one defendant requests

the instruction as to him, the court should give it because *Carter* mandates it, and a codefendant who objects to the instruction cannot successfully claim a Fifth Amendment deprivation because *Lakeside* says so.

This view prevails in the cases from other jurisdictions that have considered the issue in multiple-defendant cases. *See, e.g., Melgoza v. Peters,* 932 F.2d 676, 677 (7th Cir. 1991) (finding no error in trial court's decision to give "no inference" instruction upon codefendant's request and defendant's objection); *People v. Brooks,* 124 Ill.App.3d 222, 79 Ill.Dec. 551, 556, 463 N.E.2d 1326, 1331 (1984) (finding that, in case of codefendants' conflicting requests, there is "no constitutional infirmity so long as the trial court gives the tendered instruction"); *Lucas v. State,* 499 N.E.2d 1090, 1093 (Ind.1986) (finding that a defendant's right to an instruction must prevail over the codefendant's state constitutional right to decide whether or not he wants the instruction); *Hardaway v. State,* 317 Md. 160, 562 A.2d 1234, 1238 (1989) (determining that the constitutional right of a defendant requesting the instruction must take precedence over the wishes of a codefendant objecting to the instruction).

A New Jersey appellate court has observed that, if the trial court had denied a codefendant's request for a "no inference" instruction, the court would have committed "clear constitutional error." *State v. McNeil,* 164 N.J.Super. 27, 395 A.2d 549, 551 (App. Div.1978). The court stated:

> Obviously, since Lakeside v. Oregon any trial judge now faced with the dilemma of codefendants exercising contrary options may confidently proceed to give the charge as to all defendants and remain free from constitutional error.

*Id.,* at 551. The district court in the present case should have given Griffin's requested instruction.

### III. *Disposition.*

■ Our conclusion that the court should have given the no-inference instruction does not end the inquiry. Reversal is not required if the error was harmless, even if it is of constitutional magnitude. In that case, the State must prove beyond a reasonable doubt that the error did not cause prejudice to the defendant. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967); *State v. Traywick,* 468 N.W.2d 452, 455 (Iowa 1991). Other courts have concluded that the failure to grant a no-inference instruction can be harmless. *See, e.g., Hunter v. Clark,* 934 F.2d 856, 859–60 (7th Cir.1991); *United States v. Ramirez,* 810 F.2d 1338, 1344 (5th Cir.1987); *Finney v. Rothgerber,* 751 F.2d 858, 864 (6th Cir.1985); *Richardson v. Lucas,* 741 F.2d 753, 755 (5th Cir.1984). *But see Commonwealth v. Lewis,* 528 Pa. 440, 598 A.2d 975, 976 (1991) (holding under state constitutional provision similar to the federal self-incrimination clause that failure to give a no-inference instruction does not constitute harmless error).

In an analogous case, the Supreme Court applied a harmless-error analysis in considering a failure to give a requested instruction on the presumption of innocence. The Court suggested the following factors to consider:

> [S]uch a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial.

*Kentucky v. Whorton,* 441 U.S. 786, 789, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640, 643 (1979).

■ When these legal principles are applied to the record in this case, we believe that the error in refusing to give a no-inference instruction was harmless beyond a reasonable doubt. The weight of the evidence of guilt was overwhelming.

The act against this victim was perpetrated by four males who alternately held and raped her. The laboratory test of the seminal fluid taken from the victim was consistent with Griffin's DNA, but the test was inconclusive because the sample taken from her was a mixture of four DNA profiles, which an FBI expert was able to "visually match" to the defendant and the other three parties involved. The witness stated that none of these suspects could be excluded as potential semen donors. The victim's identification of

Griffin, however, was unequivocal. She had met him earlier that day or the day before. She had been in a car with him several times. She went to his house and spent time with him. She had previously spent time with him on the day of the event, was aware throughout the assault that it was Griffin, and afterwards consistently identified him in statements to the police and other authorities. Another perpetrator, Lincoln Dixon, who testified for the State under a plea agreement, also testified that Griffin was one of the perpetrators.

We conclude that the State has established beyond a reasonable doubt that any failure of the court to instruct the jury on Griffin's failure to testify was not prejudicial. We therefore affirm.

**AFFIRMED.**