(No. 50392.—
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PETER SAMUEL VRINER, Appellant.

*Opinion filed December 4, 1978.*

332

334

Julius Lucius Echeles, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and James R. Burgess, Jr., State's Attorney, of Champaign (Donald B. Mackay, Melbourne A. Noel, Jr., and William M. Wippold, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE MORAN delivered the opinion of the court:

Following a jury trial in the circuit court of Champaign County, the defendant, Peter Vriner, was convicted of unlawful use of weapons and two counts of armed violence, one based on intimidation and one on aggravated assault. The court sentenced defendant to a term of 364 days for unlawful use of weapons, to run concurrently with terms of one to three years on each of the armed violence convictions. The appellate court, by order, vacated the conviction of armed violence based on aggravated assault and affirmed the convictions of unlawful use of weapons and armed violence based on intimidation. (53 Ill. App. 3d 1105.) We granted defendant leave to appeal.

Defendant contends that (1) he was denied effective assistance of counsel, inasmuch as one attorney represented defendant and his brother, a codefendant; (2) the evidence of his guilt was insufficient to sustain a convic-

tion; (3) he was denied a fair trial due to improper statements made by the prosecutor; (4) his right to due process was violated because he was charged with a felony founded upon the same facts that would permit a misdemeanor charge; (5) the jury was improperly instructed; (6) he cannot, under *People v. King* (1977), 66 Ill. 2d 551, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, be guilty of both armed violence based on intimidation and unlawful use of weapons; and (7) the trial court erred in refusing to permit defendant to present the results of polygraph examinations.

At approximately 8:30 p.m., on May 4, 1976, Michael Rea was preparing to drive his car out of the parking lot of a grocery market in Champaign. As he waited for traffic to clear so that he could exit, a green Chevrolet started into the lot, but came to a screeching halt several feet from the side of Rea's car. In the front seat of that car were the driver and two passengers. The passenger on the right and driver both exchanged words with Rea. A witness, Lenford Russell, was standing approximately 35 feet from the Chevrolet during the occurrence. Russell testified that the passenger got out of the Chevrolet, picked up a stick, and, while cursing Rea, hit Rea's car with the stick. According to Rea, however, the passenger did not hit Rea's car with the stick, but merely approached to within a few feet of the car. Rea opened his car door but did not get out.

The evidence showed that the driver of the Chevrolet then got out, approached Rea's car while holding a gun at his side, and told Rea in strong language that he had better leave. Rea closed his car door and pulled out into the street. As he did so, the driver of the Chevrolet fired the gun at the ground a few feet behind Rea's car. The driver and passenger got back into the Chevrolet and left the scene.

After traveling a short distance, Rea returned to the parking lot. Finding that the Chevrolet was gone, he went

to a service station and asked the attendant to call the police. Thereafter, Rea and Russell related the incident to the police.

That same evening, between 9:15 and 9:30 p.m., the Champaign police apprehended Peter Vriner, his brother William, and Stanley Vinson at a service station in Champaign. Vinson had arrived at the service station alone in one car, and the Vriners arrived a few minutes later in a green Chevrolet. The police recovered a gun from beneath the car of John Ruedi, a witness who was at the service station. Ruedi testified that Peter Vriner had thrown the gun beneath Ruedi's car as the police were arriving. The gun matched the description of the gun used earlier that evening at the parking lot.

Later that evening, the Vriners and Vinson were three of the four people in a police lineup. There, Rea identified William Vriner as the driver of the green Chevrolet and Vinson as the passenger who had approached Rea's car. Russell, independently, also identified Vinson as the passenger, but identified Peter Vriner as the driver.

In separate indictments, Peter Vriner was charged with armed violence and unlawful use of weapons, William Vriner was charged with armed violence, and Stanley Vinson was charged with armed violence. William and Peter retained a private attorney to defend them. Another attorney represented Vinson. Upon motions by the State, the court consolidated the cases for trial.

At trial, contrary to his out-of-court identification, Rea testified that Peter Vriner was the driver of the auto. Russell also testified, consistent with his identification at the lineup, that Peter was the driver. Rea and Russell each adhered at trial to his out of-court identification of Vinson as the passenger. At the close of the State's case, the court granted a motion for a directed verdict in favor of William Vriner.

In defense Peter Vriner testified that William had

driven the car to the market that night and that Peter was the passenger whom the prosecution witnesses had identified as Vinson. William, no longer a defendant, also testified to that effect. Both stated that Vinson was not with them in the car. Another witness testified that he had been the third person in the car and that defendant's version was correct. This defense testimony was partially corroborated by Vinson and his several alibi witnesses, who placed Vinson at his home at the time of the incident at the parking lot.

The jury returned a verdict of guilty against Peter Vriner and Vinson. The court granted Vinson's post-trial motion for judgment *n. o. v.*, thereby leaving Peter Vriner as the only defendant in the case.

Defendant contends that dual representation at the joint trial of defendant and his brother denied defendant the effective assistance of counsel. He asserts that, on the basis of the contradicting evidence against the brothers, the attorney was faced with a conflict of interests.

The sixth and fourteenth amendments to the United States Constitution guarantee the right to effective assistance of counsel. (See *Powell v. Alabama* (1932), 287 U.S. 45, 71, 77 L. Ed. 158, 172, 53 S. Ct. 55, 65.) The Supreme Court has interpreted this guarantee to mean that, although joint representation of codefendants is not a *per se* violation, to require an attorney to represent two codefendants whose interests are in conflict denies one of them the right to effective assistance of counsel. *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *Holloway v. Arkansas* (1978), 435 U.S. 475, 481-83, 55 L. Ed. 2d 426, 432-33, 98 S. Ct. 1173, 1177.

In *Holloway*, where, as here, defendants' cases were consolidated, the attorney appointed for the codefendants made pretrial motions for separate counsel. He represented that, because of confidential information received from the codefendants, he was confronted with the probable

risk of a conflict of interests that would preclude him from providing each of the clients effective assistance. The trial court denied the motion. Subsequently both defendants were convicted. The Supreme Court reversed, holding that, in the face of the representations made by the attorney, the court should have either appointed separate counsel or taken adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel; that, by failing to do so, the court deprived defendants of the guarantee of effective assistance of counsel. In addition to requests for separate counsel, the rule in *Holloway* presumably would extend to requests for separate trials, because in certain cases the conflict may be alleviated by trying the defendants separately. See *Case v. North Carolina* (4th Cir. 1963), 315 F.2d 743; *People v. Walsh* (1963), 28 Ill. 2d 405, 410; Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney*, 62 Minn. L. Rev. 119, 143 (1978).

Here, the three defendants were indicted separately. The State first moved to consolidate only the case against Peter Vriner with the case against Vinson. The court asked the attorney for Peter if he had an objection to the motion, whereupon the following colloquy took place:

"[VRINER'S COUNSEL]: I do Your Honor. Because I have been sick all this time I haven't completely investigated this matter. We might have some diametrically opposed defenses. But that's the only thing I can say at the present time.

THE COURT: They may have, but you don't know at this time, is that correct?

[VRINER'S COUNSEL]: That's correct.

THE COURT: Are there any statements, or confessions, or anything of that kind being used in these two cases, made by one that incriminates somebody else?

[THE PROSECUTOR]: No statements by the defendants that we are aware of.

THE COURT: Anything you want to say about

this, [counsel]?

[VRINER'S COUNSEL]: No your Honor."

The court overruled the objection and granted the State's motion to consolidate. About two weeks later, but still prior to trial, the State moved to join the case against William Vriner with the two previously consolidated cases. The record contains the motion itself, but discloses no court proceedings regarding the motion. Thus, there is no record of an objection to the joinder of William with Peter Vriner and Vinson. In his post-trial motion, however, defendant's counsel claimed that he had objected to consolidating for trial the cases against William and Peter. (The State's brief assumed the above-quoted objection occurred at the time it sought to consolidate William Vriner's case with the already-consolidated cases of Peter Vriner and Vinson. This is not the fact.)

Defendant Peter Vriner cannot complain that consolidation of his case with Vinson's caused the alleged conflict of interests. That consolidation, over the objection based upon possible "diametrically opposed defenses," is irrelevant to the asserted conflict of interests, as Vinson was represented by his own attorney. The only possible basis for the application of the holding in *Holloway* would be the joinder of the case against William with those against Peter and Vinson over an objection based upon a potential conflict in representing both of the Vriner brothers. Inasmuch as any conflict-based objection to this joinder is not a part of the record before us, we are precluded from applying the *Holloway* rule to determine that Peter was denied the right to effective assistance of counsel because of a conflict of interests.

There remains, however, the question of whether, aside from the *Holloway*-type situation, a conflict of interests existed so as to deny defendant Peter Vriner the effective assistance of counsel. Although most questions of conflict in criminal cases arise in connection with counsel appointed for defendant, the fact that the attorney was

retained rather than appointed does not obviate the need to examine the conflict issue. (See *People v. Coslet* (1977), 67 Ill. 2d 127, 132-33; *United States v. Gaines* (7th Cir. 1976), 529 F.2d 1038, 1043.) Moreover, once the court finds a conflict of interests, it is unnecessary to establish actual prejudice to the defendant, as prejudice is presumed. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 489, 55 L. Ed. 2d 426, 437, 98 S. Ct. 1173, 1181; *Glasser v. United States* (1942), 315 U.S. 60, 75-76, 86 L. Ed. 680, 702, 62 S. Ct. 457, 467-68; *People v. Coslet* (1977), 67 Ill. 2d 127, 133; *People v. Kester* (1977), 66 Ill. 2d 162, 168; *People v. Stoval* (1968), 40 Ill. 2d 109, 113.) Joint representation of criminal codefendants, however, is not *per se* violative of the guarantee of effective assistance of counsel. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 482-83, 55 L. Ed. 2d 426, 433, 98 S. Ct. 1173, 1177.) Although there is always the possibility that the interests of the defendants may diverge (Hyman, *Joint Representation of Multiple Defendants in a Criminal Trial: The Court's Headache,* 5 Hofstra L. Rev. 315 (1977)), this court has agreed that a conflict of interests is not inherent in joint representation situations merely by virtue of such representation. (*People v. Berland* (1978), 74 Ill. 2d 286, 299-300; *People v. Echols* (1978), 74 Ill. 2d 319, 326-27; *People v. Durley* (1972), 53 Ill. 2d 156, 160.) Instances of joint representation of criminal codefendants, therefore, are distinguishable from those situations (*People v. Coslet* (1977), 67 Ill. 2d 127 (counsel represented both the defendant, who was charged with murdering her husband, and the administrator of the husband's estate, which stood to benefit by a conviction); *People v. Kester* (1977), 66 Ill. 2d 162 (counsel represented the defendant after having worked on the case as a prosecutor); *People v. Stoval* (1968), 40 Ill. 2d 109 (counsel represented the

defendant after representing the owner of the jewelry store which defendant was charged with burglarizing)) in which conflicts of interest are found to be inherent in the nature of the representation. (See *People v. Berland* (1978), 74 Ill. 2d 286, 303.) Thus, to prevail on a claim of ineffective assistance of counsel because of representation of criminal codefendants by a single attorney, a defendant must show an "actual conflict of interest manifested at trial." *People v. Berland* (1978), 74 Ill. 2d 286, 299-300.

At trial in this case, as earlier stated, the State's two key witnesses both identified Peter as the driver of the green Chevrolet. The record discloses that the attorney for William and Peter rigorously cross-examined these witnesses as to possible misidentification and general lack of perception. There is no indication that the attorney was in a position that would cause him to slight the interests of one client in favor of the other. This is unlike the situation in *People v. Echols* (1978), 74 Ill. 2d 319, in which confusion surrounding certain fingerprint evidence introduced by the prosecution placed defense counsel in an untenable position. A prosecution witness mistakenly identified one defendant, the appellant, as the person to whom the fingerprint of another defendant belonged. It became immediately apparent that counsel could not give the defendants his undivided loyalty. After William was dismissed from the case, it became apparent that Peter's defense was that William was the driver and Peter the passenger. Both Peter and William testified to this effect, as did the third person in the car. In the presentation of his defense, Peter had not only effective assistance, but the exclusive assistance of his attorney, totally unfettered and unimpaired by any conflicting duties and loyalties.

In most criminal cases, strategy of counsel in pre-

senting the defense must await the actual and perceived results of the prosecution's case. The final outcome invariably will disclose something that counsel could have done during the case that he did not do. Consequently, defense strategy in multiple representation situations often will invite, through hindsight, conceived notions that the representation adversely affected the interests of at least one defendant at some point in the trial process. For us now to say that the presentation of the defense in this case demonstrated that an impermissible conflict of interests existed from the outset of the trial would be tantamount to adoption of a *per se* rule which, absent a knowing waiver, would require separate representation of criminal codefendants in every case. Before we arrive at the point of reversing a conviction without requiring a showing of prejudice to the defendant, a positive basis must be found for concluding that an actual conflict of interests existed. We hold that an insufficient basis exists in this case for finding that there existed a conflict of interests which denied defendant the effective assistance of counsel.

Defendant's argument that the evidence of his guilt was insufficient to sustain a conviction is unpersuasive. This court will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Stringer* (1972), 52 Ill. 2d 564, 568; *People v. Yarbrough* (1977), 67 Ill. 2d 222, 227.) Defendant points to Rea's conflicting identification of the driver of the Chevrolet, to the trial judge's acquittal of Vinson, which, after Russell's identification of Vinson as the passenger, allegedly discredited Russell's testimony, and to the exculpatory testimony of the defendant and other defense witnesses. It was the function of the jury to determine the credibility of the witnesses, to weigh the evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 298-99.) This is not a case in which,

as in *People v. Reese* (1966), 34 Ill. 2d 77, the evidence was so unsatisfactory as to raise a reasonable doubt of guilt. Although Rea identified William Vriner at the lineup as the driver of the Chevrolet, Russell identified defendant as the driver. In addition, both witnesses positively identified defendant at trial as the driver. The evidence discloses that the lighting conditions in the parking lot were good, providing the witnesses with ample opportunity to observe. Russell's verified perception of damage to the front end of the Chevrolet and of the car's license plate number add weight to his identification of defendant as the driver. It is well settled that positive identification by a single witness who had ample opportunity to observe is sufficient to support a conviction. *People v. Stringer* (1972), 52 Ill. 2d 564, 569; *People v. Williams* (1975), 60 Ill. 2d 1, 12; *People v. Jones* (1975), 60 Ill. 2d 300, 307-08.

It appears from the record that the trial judge granted Vinson's motion for judgment *n.o.v.* not because he refused to believe that Vinson was present at the scene, but rather because he considered the evidence insufficient to hold Vinson accountable for the actions of defendant. This factor also answers defendant's assertion that, because the trial judge found Vinson not guilty, defendant's conviction on like evidence cannot stand. The failure to convict one codefendant does not raise a reasonable doubt as to the guilt of the other codefendant unless it is shown that the evidence against both defendants is identical in all respects. (*People v. Stock* (1974), 56 Ill. 2d 461, 465.) The evidence as to defendant and Vinson was substantially different. The jury's verdict disclosed that defendant had the gun, thereby more strongly establishing defendant's guilt than Vinson's. Thus, the judgment *n.o.v.* for Vinson is not inconsistent with defendant's conviction.

Defendant next contends that he was denied a fair trial where the prosecutor, over objection, stated his

personal opinion that defendant was the man with the gun. Ordinarily the prosecutor should not express his personal opinion as to defendant's guilt. (*People v. Prim* (1972), 53 Ill. 2d 62, 77, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731; *People v. Skorusa* (1973), 55 Ill. 2d 577, 585.) The prosecutor's statement, however, made in closing argument, was in rebuttal to the following statement which was made by defendant's attorney during closing argument: "[H]e [the prosecutor] hasn't even proved his own case beyond a reasonable doubt to the satisfaction of himself. He absolutely has not done that." In his argument, the prosecutor replied: "To clear the air, yeah, I think Pete Vriner was the man with the gun \* \* \*." Defense counsel objected and this exchange ensued:

> "[THE PROSECUTOR]: Judge, this is what [defense counsel] said in his argument, that I don't even believe it.
>
> THE COURT: Ordinarily, of course, you're not supposed to express your opinion but I think that argument was made.
>
> [THE PROSECUTOR]: Thank you."

The record thus demonstrates that defendant's counsel invited the complained-of statement by the prosecutor and cannot, therefore, rely on such statement as error. (*People v. McDonald* (1936), 365 Ill. 233, 246; *People v. Myers* (1966), 35 Ill. 2d 311, 335, *cert. denied* (1967), 385 U.S. 1019, 17 L. Ed. 2d 557, 87 S. Ct. 752.) Accordingly, we find no error in the prosecutor's statement.

Defendant contends that his right to due process was violated because the prosecutor charged defendant with the felony of armed violence based on aggravated assault founded upon the same facts that would permit the misdemeanor charge of aggravated assault. As a prerequisite to this contention, defendant urges this court to overrule its decision in *People v. McCollough* (1974), 57 Ill. 2d 440, *appeal dismissed* (1974), 419 U.S. 1043, 42 L. Ed. 2d 637, 95 S. Ct. 614. Therein this court held that

permitting the conduct of a defendant to be punished under either of two different sections of the Criminal Code, which impose different degrees of punishment, does not violate defendant's constitutional rights. In the instant case, the appellate court reversed, on other grounds, the conviction for armed violence based on aggravated assault. We therefore find it unnecessary to reconsider *McCollough* or, consequently, to decide the merits of defendant's contention.

Defendant argues that the trial judge erroneously instructed the jury on the offense of armed violence based on intimidation because of the manner in which the instruction defined the elements of that offense. At the request of the State, the following pertinent part of a jury instruction was given:

> "To sustain the charge of armed violence based upon intimidation against the defendant, Peter Samuel Vriner, the State must prove the following propositions:
>
> First: That the defendant, Peter Samuel Vriner, or a person for whose conduct Peter Samuel Vriner is responsible, communicated to Michael Rea a threat to inflict, without lawful authority physical harm on Michael Rea, and
>
> Second: That the defendant, Peter Samuel Vriner or a person for whom Peter Samuel Vriner is responsible then intended to cause Michael Rea to perform an act, and
>
> Third: That the defendant, Peter Samuel Vriner, or a person for whose conduct Peter Samuel Vriner is responsible, used a dangerous weapon."

Specifically, defendant complains that the instruction does not state that the weapon was used as part of or during the threat. Defendant failed, however, to object at trial to the proferred instruction on the ground which he now asserts. Our Rule 451 (58 Ill. 2d R. 451) grants the right to object to instructions and directs that the ground be particularly specified. Failure to object to proposed instructions usually serves as a waiver of the objection

*(People v. Springs* (1972), 51 Ill. 2d 418, 424, *cert. denied* (1972), 409 U.S. 908, 34 L. Ed. 2d 169, 93 S. Ct. 252), and thus precludes the party from raising the objection on appeal *(People v. Smith* (1978), 71 Ill. 2d 95, 104), "but substantial defects are not waived by failure to make timely objections thereto if the interests of justice require" (58 Ill. 2d R. 451(c)).

The charge against defendant of armed violence based on intimidation was founded upon defendant's threat of physical harm communicated to Rea while defendant held the gun at his side. At the time of the offense, section 33A–2 of the Criminal Code of 1961 defined armed violence as the performance of any one of several enumerated acts, including intimidation (see Ill. Rev. Stat. 1975, ch. 38, par. 12–6), "while armed with a dangerous weapon." Ill. Rev. Stat. 1975, ch. 38, par. 33A–2.

The jury could reasonably have understood the instruction to require them to find the defendant guilty only if, contrary to defendant's argument, they found he had used the weapon while communicating the threat. This is especially true in view of the fact that the court further instructed the jury that: "A person commits the crime of armed violence who, *in committing* intimidation or aggravated assault, is armed with a dangerous weapon." (Emphasis added.)

Furthermore, the uncontradicted evidence demonstrates that the driver had the gun in his hand at the time of the offense. Consequently, the complained-of instruction neither constituted a substantial defect nor prejudiced the rights of the defendant.

Defendant contends that, under *People v. King* (1977), 66 Ill. 2d 551, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, he cannot be guilty of both armed violence based on intimidation and unlawful use of weapons. In *King,* this court held that convictions with concurrent sentences can be entered when more than

one offense arises from a series of incidental or closely related acts and when the offenses are not, by definition, lesser included offenses.

Defendant's argument that unlawful use of weapons is a lesser included offense of armed violence based on intimidation is without merit. As pointed out by the State in its brief, the offense of unlawful use of weapons as charged here requires proof of elements that are not required for the offense of armed violence based on intimidation. (See Ill. Rev. Stat. 1975, ch. 38, pars. 24–1(a)(10), 33A–2, 12–6(a).) Also, the evidence discloses that defendant carried or possessed the gun at times other than when he communicated the threat to Rea. This is not, therefore, a case "where more than one offense is carved from the same physical act." *People v. King* (1977), 66 Ill. 2d 551, 566, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

Defendant asserts that the trial court erred in refusing to permit him to present the results of polygraph examinations which corroborated defendant's witnesses. However, the well-established rule is that the results of polygraph examinations are not admissible at trial to prove the guilt or innocence of the accused. *People v. Nicholls* (1970), 44 Ill. 2d 533, 539; *People v. Zazzetta* (1963), 27 Ill. 2d 302, 306.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*