THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BRENDA GILLIHAN, Defendant-Appellant.

Third District   No. 80-564

Opinion filed August 12, 1981.—Rehearing denied October 1, 1981.

Louis P. Walter, Jr., of Ohio, for appellant.

Timothy H. Slavin, State's Attorney, of Morrison (John X. Breslin, Rita Kennedy, Gillum Ferguson, and Martin N. Ashley, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant Brenda Gillihan was charged with armed robbery and unlawful possession of cannabis and alcoholic liquor. After the latter two charges were severed following guilty pleas, the cause proceeded to a jury trial. Defendant was found guilty of armed robbery and sentenced by the circuit court of Whiteside County to a six-year term of imprisonment.

Complainant Jose Rios was the State's principal witness and testified to the following series of events. On the evening of June 6, 1980, after visiting a discotheque, Rios accompanied a friend to a Ramada Inn near Rock Falls where he spent the evening dancing and drinking three beers. Around midnight he began walking back to the YMCA, three miles distant, where he was living. He had apparently had his driver's license revoked. After walking approximately 300 feet, complainant was approached by an automobile driven by a young man accompanied by defendant. The young man offered Rios a ride and he accepted, taking a seat to defendant's right on the front seat.

After a high speed ride to the vicinity of the YMCA, the driver reduced his speed and Rios noticed a knife in defendant's left hand. She thereafter stated, "Give me your money or else I'm going to use this knife." Rios wanted to get out of the automobile, but it was still moving, and defendant reached over and locked his door with her right hand. After a second threat made with the knife approximately 18 inches from his face, complainant surrendered his wallet which contained personal papers, his birth certificate and $230 in cash. He then got out of the automobile, checked the rear license plate, ran to the police station, and reported the robbery. Three days later, the wallet was found without cash outside the YMCA.

Defendant's version of the evening's events was entirely different. She testified that she stopped at the Ramada Inn, at approximately 11:45 p.m. on the evening in question, to use the restroom and purchase some cigarettes. Her fiance, Ronald Robinette, who was driving the car, waited outside. While inside, defendant encountered Rios, who was intoxicated and smelled of alcohol. Complainant almost bumped into her as she exited the lounge through swinging doors and asked defendant if she "wanted to make some easy money." She ignored him and continued into the restroom. When she exited in approximately five minutes Rios was waiting and repeated his question. Defendant turned around and looked at him and he said, "Let's go upstairs." She refused and quickly started walking away. Complainant followed, asking if she had a car and license. She said yes as she walked out and shut the door, and hurried to her automobile. Rios followed again, apologized, and requested a ride. After learning his destination, defendant said, "I guess. I'm not driving." She testified that she was extremely angry and was afraid of an altercation between complainant and Robinette.

When the threesome arrived at the YMCA, defendant said, "How about some of that money you were telling me about for some gas?" When Rios replied that he had none, defendant asked if he lied at the Ramada Inn and to let her see for herself. When complainant opened the door and got out, she repeated her question. Rios then handed her his wallet. Defendant found he had lied as the wallet contained no cash and angrily tossed it out the window. She specifically denied ever threatening complainant, or possessing a knife. Defendant stated she might have had a long comb in her hand, and such a comb was found when she was arrested.

The State called three witnesses in rebuttal. Officer Ronald Pothoff stated that, when she was arrested, defendant stated that she could not have been involved in the incident as she and Robinette were having pizza in Morrison at that time. Officer Jeffrey Wasson, to whom Rios reported the robbery minutes after it occurred, testified that complainant showed no signs of intoxication at that time. Rios testified that he had neither seen nor spoken to defendant in the Ramada Inn.

The first of three issues presented for our review is whether the evidence presented at trial was sufficient to establish defendant's guilt beyond a reasonable doubt. While neither the knife nor the proceeds of the alleged robbery were introduced into evidence, Rios gave positive and credible testimony as to each element of the charged offense. His testimony was consistent both internally and with other evidence produced by the State, despite lengthy and vigorous cross-examination. Defendant's testimony regarding complainant's inebriation was impeached, and her credibility was affected by her earlier denial of having given

anyone a ride. In reaching its verdict, it is understandable the jury gave little credence to defendant giving a ride to an inebriate who twice propositioned her and to Rios simply handing over a wallet, containing at least his birth certificate, and walking away.

■■ It is the function of the jury to determine the credibility of the witnesses, to weigh the evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) The testimony of a single credible witness is sufficient to convict, notwithstanding contradictory testimony by an accused. (*People v. Sullivan* (1970), 46 Ill. 2d 399, 263 N.E.2d 38.) A court of review will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of a defendant's guilt. (*People v. Vriner.*) We do not find the evidence herein can be so categorized.

The second issue presented for our review is whether the trial court erred in permitting the State to cross-examine defendant in regard to the severed possession offenses. As defendant failed to object to this cross-examination, this issue has not been preserved for review (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387), and we decline to recognize it as plain error.

The third and final issue presented for our review is whether this cause must be reversed due to the incompetency of defendant's privately retained counsel. Defendant argues that the previously mentioned failure to object, coupled with the failure to move for a directed verdict, constitutes incompetence.

■■ ■ A court of review will not reverse a conviction because of the incompetency of privately retained counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Our review of the record indicates this is not here the case. Competency is determined from the totality of counsel's conduct at trial. (*People v. Murphy.*) There is no reason to believe a motion for a directed verdict would have been successful, and while counsel's failure to object may have been an error in judgment or trial strategy, such does not establish incompetency.

Accordingly, the judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.