NOTICE
Decision filed 09/17/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220095-U

NO. 5-22-0095

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 10-CF-1664 |
| | ) | |
| JOSE CANIZALEZ-CARDENA, | ) | Honorable |
| | ) | Jason M. Bohm, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the judgment of the trial court denying the defendant's third-amended successive postconviction petition after a third-stage evidentiary hearing where the defendant failed to demonstrate ineffective assistance of trial and appellate counsel.

¶ 2    On June 8, 2011, the defendant, Jose Canizalez-Cardena, was found guilty of one count of unlawful possession with intent to deliver 900 grams or more of methamphetamine in violation of section 55(a)(1) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/55(a)(1) (West 2010)). The defendant was sentenced to 25 years' incarceration in the Illinois Department of Corrections (IDOC). The defendant's conviction was affirmed on direct appeal. *People v. Canizalez-Cardena* (*Canizalez I*), 2012 IL App (4th) 110720, ¶ 1.

¶ 3    The defendant now appeals the denial of his third-amended successive petition for postconviction relief (petition) filed on February 1, 2021, pursuant to the Post-Conviction Hearing

1

Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). The petition proceeded to a third-stage evidentiary hearing on December 2, 2021, and the trial court entered a written order denying the defendant's petition on January 21, 2022. The defendant timely appealed and, on appeal, argues that the trial court erred in concluding that trial and appellate counsel did not provide ineffective assistance of counsel. For the following reasons, we affirm the judgment of the trial court denying the defendant's postconviction petition.

¶ 4                                    I. BACKGROUND

¶ 5      The defendant directly appealed his conviction and filed two prior postconviction petitions. *Canizalez I*, 2012 IL App (4th) 110720; *People v. Canizalez-Cardena* (*Canizalez II*), 2015 IL App (4th) 130680-U; *People v. Canizalez-Cardena* (*Canizalez III*), 2020 IL App (4th) 180212.

¶ 6      On September 30, 2010, the defendant was charged with one count of unlawful possession with intent to deliver over 900 grams of methamphetamine (meth). The charge stems from a traffic stop on September 29, 2010, in which the defendant was a passenger in a vehicle. The defendant was in the passenger seat and his codefendant, Leonel Galaviz-Galaviz, was driving the vehicle. Illinois State Trooper Owen discovered, after using his drug detection dog to sniff the perimeter of the vehicle, approximately seven pounds of meth concealed within the vehicle. The defendant and his codefendant hired the same attorney, Mr. Harvey Welch. As English was a second language for both, they each required a Spanish court interpreter to be present for court proceedings and to communicate with counsel.

¶ 7      Trial counsel filed a motion to suppress evidence on November 19, 2010. The motion alleged that the dog sniff and the subsequent search of the vehicle were unconstitutional. At the hearing on December 28, 2010, the State and trial counsel agreed to consolidate the two cases for purposes of the hearing on the motion to suppress. The trial court denied the motion to suppress,

2

stating that Trooper Owen had probable cause to believe the vehicle driven by the codefendant was speeding and following too closely, which justified the traffic stop. The trial court found the length of the stop was reasonable, and the dog sniff did not impermissibly prolong the traffic stop. After the dog alerted the smell of illegal narcotics outside the driver's side window of the vehicle, a search of the interior of the vehicle was then permitted.

¶ 8 The State filed a motion for joinder of related prosecutions on March 1, 2011, for the defendant and codefendant. The hearing was held on March 9, 2011. Trial counsel did not object to the motion and stated that he did not have concerns about any antagonistic or inconsistent defenses to either defendant. He stated that he had briefly discussed the decision with the two codefendants. There being no objection, the State's motion for joinder was granted.

¶ 9 On March 16, 2011, the defendants waived their right to a jury trial and proceeded to a stipulated bench trial. The stipulated facts were filed on May 11, 2011, and a hearing was held the same day. Trial counsel stated that the defendants understood that the trial court will consider the stipulations as evidence during the bench trial. He further stated that, "I also stressed then, [Y]our Honor, that our main issue is regarding the search that took place, and and [*sic*] I think they understand that's our main issue, and that's why we can proceed in this manner." The trial court then admonished the defendants of their rights and discussed the possible penalties. The defendant then stated that he understood everything that was explained that he did not have any questions, and that he wished to proceed with a stipulated bench trial.

¶ 10 The parties filed five stipulations, which included the stipulation that Trooper Owen would testify consistently with his testimony during the motion to suppress hearing on December 28, 2010, and his police reports. The parties stipulated to the admission of the video of the traffic stop, the photographs depicting the scene of the traffic stop, and the search of the vehicle. The

3

stipulations also included testimony from experts, one which is from Trooper Owens, stating that in his expert opinion, the large quantity of the methamphetamine meant that it was "possessed with the intent to be delivered." The experts would further confirm the substance as methamphetamine, the weight and value of the methamphetamine, and the chain of custody.

¶ 11    The "THIRD STIPULATION," indicated that Agent Harrold of the Vermilion County Metropolitan Enforcement Group would testify consistently with his report, which was submitted as an exhibit to the stipulations. The report was attached and labeled as "Exhibit 3." Within the report, Agent Harrold summarized the interview he conducted with the codefendant after his arrest. The codefendant stated that he and the defendant were driving from the Los Angeles, California, area to Chicago, Illinois, taking turns driving when one became tired. The codefendant said he could not find construction work in California, so a man had offered him $4,000 to drive a vehicle to Chicago, Illinois. The codefendant asked the defendant to travel with him, so he would not be alone, but the codefendant stated that the defendant did not know about the payment to the codefendant. The two had known each other for six months prior to the drive. The codefendant said he did not know the defendant to be involved with any type of narcotics. He stated that neither he nor the defendant knew that meth was in the vehicle.

¶ 12    The matter proceeded to the stipulated bench trial on June 8, 2011. The State presented argument, summarizing the details of the stipulated facts and evidence as to the elements of the offense. Trial counsel then argued that the State failed to prove the elements of the offense, specifically the intent to deliver. The trial court found the defendant, and the codefendant, guilty of all charges. The defendant was then sentenced to 25 years' imprisonment in the IDOC. Trial counsel filed a motion to reconsider sentence on August 12, 2011, which was denied.

4

¶ 13    The defendant filed a direct appeal challenging the sufficiency of the evidence, the trial court's order denying the defendant's motion to suppress evidence, and that the trial court relied on an improper sentencing factor. *Canizalez I*, 2012 IL App (4th) 110720. The appellate court found that the State proved that the defendant had constructive possession of the vehicle, and that it was "incredible" to believe that the defendant would drive the vehicle across the county without knowing the true purpose of doing so. *Id.* ¶ 15. The appellate court also found that the trial court properly denied the defendant's motion to suppress the evidence of the vehicle search, because the police had the requisite probable cause to search the vehicle. *Id.* ¶ 19. Additionally, the appellate court found that the trial court had properly considered the quantity of the meth involved in this case during sentencing, the defendant's current and prior illegal entries into the country, and the defendant's financial impact statement. *Id.* ¶ 24. As such, the trial court did not err in sentencing the defendant. *Id.* The trial court's judgment was affirmed. *Id.* ¶ 26.

¶ 14    The defendant filed a *pro se* petition for postconviction relief on April 22, 2013, alleging ineffective assistance of trial counsel due to a conflict of interest. The defendant stated that his defense was in disparity with his codefendant's due to his decreased culpability, and that he did not understand the ramifications of joint representations due to communication issues. The trial court dismissed the petition, finding that the defendant had not shown an actual conflict of interest. The defendant appealed, and the trial court's dismissal was affirmed. *Canizalez II*, 2015 IL App (4th) 130680-U.

¶ 15    On October 17, 2016, the defendant filed a successive *pro se* postconviction petition under the "cause and prejudice" test, raising the issues of ineffective assistance of trial and direct appellate counsel, as well as a claim of actual innocence. The trial court granted the defendant's filing of a successive petition and appointed counsel. Counsel filed an amended postconviction

petition on June 29, 2017, that alleged the same claims with the exception of the actual innocence claim. The State filed a motion to dismiss the amended successive petition. The trial court, *sua sponte*, reversed its order granting the successive petition, and then dismissed the successive petition. The defendant appealed and the dismissal was reversed, based on the finding that the trial court erred in reversing its prior order. The matter was then remanded for further postconviction proceedings. *Canizalez III*, 2020 IL App (4th) 180212, ¶ 37.

¶ 16    On February 1, 2021, new postconviction counsel (postconviction counsel) filed a third-amended successive petition for postconviction relief (petition). The petition contained claims under the "cause and prejudice" basis for ineffective assistance of counsel, as well as a claim of actual innocence. The petition alleged that trial counsel was ineffective for failing to communicate with the defendant outside of the presence of his codefendant and through a qualified Spanish-speaking interpreter, which exposed the defendant "to great prejudice because of an inability to participate meaningfully in his own defense strategy." Further, the petition alleged trial counsel was ineffective for pursuing an unreasonable trial strategy, which stipulated to an expert opinion that the amount of drugs in the vehicle was sufficient to impute intent to deliver when the defendant told trial counsel that he was innocent. The petition argued that established caselaw undercut this expert's opinion that, due to the location and quantity of the meth, the meth was possessed with the intent to be delivered. The petition also alleged that the defendant received ineffective assistance of trial counsel due to an actual conflict of interest, where trial counsel was forced to sacrifice the interests of one client over another at trial. The defendant argued that where the codefendant had stated that the defendant was unaware of the codefendant receiving compensation for the trip, trial counsel should have rigorously investigated the possibility that the codefendant was culpable and the defendant was not, but the dual representation prevented him from doing so.

6

Thus, trial counsel operated under a conflict of interest in representing two differently situated codefendants. Additionally, appellate counsel was ineffective for not raising this issue on direct appeal where the conflict was supported by the direct appeal record. The defendant also argued a claim of actual innocence, stating that the codefendant's statement that the defendant did not know of the payment the codefendant was offered to drive the vehicle was exonerating and was exculpatory evidence that should have been used to benefit the defendant. The defendant argued that the failure to pursue the defendant's claim of actual innocence constituted ineffective assistance of trial and appellate counsel.

¶ 17    The State filed a motion to dismiss and postconviction counsel responded. On October 28, 2021, the trial court dismissed the claim of actual innocence, finding that the defendant "simply repeats the same assertions that he made at trial," and that this claim was already rejected by both the trial and appellate courts. The trial court then ordered an evidentiary hearing on the claims of ineffective assistance of trial and appellate counsel. The matter proceeded to an evidentiary hearing on December 3, 2021.

¶ 18    During the hearing, the defendant testified that he does not speak English and is illiterate in Spanish. He stated that the interpreter provided by trial counsel for their meetings was not fluent in Spanish and the defendant could not understand him. The defendant attempted to tell trial counsel that the defendant did not understand the interpreter but was unable to do so. The defendant testified that he met with trial counsel two or three times and always met him with the codefendant present. The defendant said he never understood the meaning of a motion to suppress, consolidated trial, or stipulated bench trial. He agreed to a stipulated bench trial because trial counsel said "it was the best for us" but did not explain further. The defendant testified that he told trial counsel he did not know about the payment or the drugs, but that was not discussed as a defense. If the

7

defendant understood the consequences of trial counsel representing both the defendant and his codefendant, the defendant stated that he would have hired his own attorney.

¶ 19   On cross-examination, the defendant stated that he understood what was happening during the present third-stage evidentiary hearing, but he did not understand the interpreter in court previously. The defendant said he knew trial counsel was representing his codefendant for the motion to suppress hearing and the stipulated bench trial. The defendant testified that he believed the case would have turned out differently if the trial court heard that the defendant did not know about the meth or the payment.

¶ 20   The State called the defendant's appellate counsel who represented the defendant on the direct appeal, and she testified to her representation of the defendant. She stated that she argued sufficiency of the evidence and the constitutionality of the initial traffic stop. Appellate counsel stated she was able to communicate with the defendant through a translator on the phone. She did not recall any defense raised at trial that would have pitted the defendants against each other. She did not, however, raise a conflict of interest issue on direct appeal because it would have been "difficult to make a prejudice argument" with the status of the record on appeal. During cross-examination, she further explained that in a postconviction petition, the defendant would be able to expand the record to include his conversations with trial counsel and other relevant information. Additionally, at the time she filed the appeal, she testified that the state of the law regarding raising ineffective assistance of counsel claims on direct appeal was different than it is now.[1] She explained that appellate courts, and the Fourth District in particular, preferred certain issues to be

---

[1]The defendant's notice of appeal on direct appeal was filed on August 12, 2011. The evidentiary hearing was held on December 3, 2021. Appellate counsel's testimony is referencing *People v. Veach*, 2017 IL 120649, in which the supreme court held that where the record is sufficient to resolve a claim of ineffective assistance of counsel, the claim should be brought on direct appeal instead of in a postconviction petition. *Id.* ¶¶ 46-47. Because that was not the law at the time she filed the brief, appellate counsel did not bring the ineffective assistance of trial counsel claim on direct appeal.

raised in postconviction petitions and would decline to review them and that would also place the claim at risk of being found to be waived or *res judicata* depending on whether it was raised on direct appeal or not.

¶ 21    The State then called the defendant's trial counsel. He testified that he was first contacted by the codefendant for representation, then the defendant hired him as well. During their first meeting, trial counsel and the defendant met with a Spanish-speaking interpreter, who was a bilingual student at the University of Illinois. Trial counsel said that the defendant did not appear confused when communicating through the interpreter and, to his knowledge, never expressed any concern about the interpreter. Trial counsel met with the defendant two or three times. Trial counsel said that based on his assessment of the facts of the case, he felt "the only real viable defense was to try to suppress the evidence." He explained that in his experience, the circumstantial evidence would undercut any other defense, including the defense of the defendant not knowing about the meth in the vehicle. Trial counsel said that he had concerns about the defendant testifying to his lack of knowledge and being cross-examined on those facts. Trial counsel testified that even if he had represented the defendant alone, he would not have argued that the defendant did not know the meth was in the vehicle.

¶ 22    On cross-examination, trial counsel testified that the Spanish interpreter he hired for jail contacts was a family friend who did not have any certifications. During their meetings, however, the defendant and the interpreter appeared to be communicating with each other. Trial counsel said that he would meet with the defendant and the interpreter without the codefendant present. Trial counsel said he believed the stipulated bench trial was not antagonistic to the defendant, and that he had explained the bench trial to his client briefly. In addition to the Spanish interpreter he used for his meetings with the defendant at the jail, trial counsel utilized the court-provided certified

9

interpreter to explain the motion to consolidate the cases and the stipulated bench trial. The parties presented no further evidence and proceeded to argument.

¶ 23    The defendant's postconviction counsel argued that the defendant did not understand trial counsel's private interpreter during their meetings, and as such he could not participate in his own defense. The defendant was told to "go along" with trial counsel's decisions about the case but that the defendant did not understand the legal explanations of what was happening. Postconviction counsel also argued that the defendant received ineffective assistance of trial counsel because trial counsel had a conflict of interest. Specifically, if the defendant had a different attorney and a separate trial, he could have received a different result. The trial court asked postconviction counsel if the defendant wanted the lack of knowledge defense included because he would not have been convicted if it was, to which postconviction counsel responded, "That's correct. And that's what he believes is the most important issue." Postconviction counsel continued argument, stating, "[The defendant] didn't know about the payment or what was going on beyond driving to Illinois to look for a job is the understanding. And I think that would be antagonistic." When discussing trial counsel first representing the codefendant and later representing the defendant, postconviction counsel argued that trial counsel did not change his defense strategy and that:

> "And I believe that that is antagonistic because he now has a new person who has slightly different set of—he has a slightly different set of facts going with him. And I think the big one is is [*sic*] that he knows nothing about this payment, you know? Yes, he is in the vehicle. He knows nothing about this payment. He's not involved with the payment. He's not involved with this car, other than he is getting a ride.
>
> So I think that *** that's antagonistic, and that we could have a separate set of— separate trial strategy based on that information."

10

¶ 24     On January 21, 2022, the trial court entered a written order denying the defendant's third-amended successive petition for postconviction relief. The trial court found trial counsel's testimony more credible than the defendant's in relation to their communication and the defendant's comprehension of the translators. Additionally, the trial court found that the defendant did not establish prejudice under the claim of ineffective assistance of trial counsel. The trial court found, "In any event, trial counsel cannot be said to have been deficient in pursuing a trial strategy that allowed for the admission of the very information [the defendant] wanted to be presented."

¶ 25     The defendant now appeals the denial of his petition, arguing that the trial court's denial was manifestly erroneous. The defendant argues that the trial court erred in denying his petition because trial counsel labored under an actual conflict of interest, and the conflict prevented trial counsel from advocating an alternative defense. He also argues that the trial court erred in denying the petition because appellate counsel was ineffective where the record sufficiently showed ineffective assistance of trial counsel on direct appeal. The defendant requests that this court reverse the order denying postconviction relief and remand for a new trial.

¶ 26                                II. ANALYSIS

¶ 27     The Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in his or her original trial or sentencing hearing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). A postconviction proceeding is not an appeal from an underlying judgment, but rather a collateral attack on the judgment. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009). As a collateral proceeding, a postconviction proceeding allows inquiry only into constitutional issues that were not, and could not have been, adjudicated in an appeal of the underlying judgment. *Id.*

11

¶ 28    The Act sets forth a three-stage process for postconviction proceedings. *People v. Little*, 2012 IL App (5th) 100547, ¶ 12. At the first stage, the trial court independently assesses a defendant's petition and may summarily dismiss the petition if the court determines that it is frivolous or patently without merit. *Id.* If not dismissed at the first stage, the petition advances to the second stage where counsel may be appointed, and the State may move to dismiss the petition. *Id.* At the second stage, the trial court must determine whether the petition contains sufficient allegations of a constitutional violation, and if a substantial showing is made, the petition proceeds to the third stage for an evidentiary hearing. *Id.*

¶ 29    A defendant has the burden of proving a substantial constitutional violation at the third stage. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The trial court "may receive evidentiary proof via affidavits, depositions, testimony, or other evidence," at the third-stage evidentiary hearing. *People v. Gerow*, 388 Ill. App. 3d 524, 527 (2009). The evidentiary hearing allows the parties to "develop matters not contained in the trial record and, thus, not before the appellate court." *People v. Lester*, 261 Ill. App. 3d 1075, 1078 (1994).

¶ 30    The Act "generally contemplates the filing of only one postconviction petition." *Ortiz*, 235 Ill. 2d at 328. A successive postconviction petition may only be filed if leave of court is granted. 725 ILCS 5/122-1(f) (West 2020). "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* Fundamental fairness allows for the filing of a successive petition only where the petition complies with the cause and prejudice test. *Pitsonbarger*, 205 Ill. 2d at 459. "Cause" is shown when an objective factor external to the defense impeded counsel's efforts to raise the claim in an earlier proceeding. *Ortiz*, 235 Ill. 2d at 329. "Prejudice" is shown

12

where the claimed constitutional error "so infected the entire trial that the resulting conviction or sentence violates due process." *Pitsonbarger*, 205 Ill. 2d at 464.

¶ 31     In the present case, on October 17, 2016, the defendant filed a successive postconviction petition that was denied by the trial court. On appeal, this court found the trial court erred and reversed the decision, remanding the case for further postconviction proceedings. *Canizalez III*, 2020 IL App (4th) 180212, ¶ 37. New postconviction counsel for the defendant then filed an amended successive petition on February 1, 2021, alleging that ineffective assistance of trial and appellate counsels met the "cause and prejudice" test, and actual innocence. The trial court dismissed the actual innocence claim, but ordered a third-stage evidentiary hearing on the ineffective assistance of counsel claims.

¶ 32     The trial court serves as the finder of fact at the evidentiary hearing and, as such, it is the trial court's function to determine witness credibility, decide the weight to be given to the evidence, and to resolve evidentiary conflicts. *People v. Brown*, 2020 IL App (1st) 190828, ¶ 43. When a petition is advanced to the third stage and an evidentiary hearing has been conducted involving fact-finding and credibility determinations, we will not reverse a trial court's decision unless it is manifestly erroneous. *Pendleton*, 223 Ill. 2d at 473. A trial court's ruling is manifestly erroneous if it contains an error that is clearly evident, plain, and indisputable. *People v. Hughes*, 329 Ill. App. 3d 322, 325 (2002).

¶ 33                                              A. Forfeiture

¶ 34     First, we will address the State's argument that the issues raised by the defendant are barred by *res judicata* and prior credibility determinations because of the defendant's direct appeal. On direct appeal, the defendant argued that the evidence was insufficient to convict, that the motion to suppress evidence was improperly denied, and that the trial court considered improper factors

13

in sentencing. *Canizalez I*, 2012 IL App (4th) 110720, ¶ 1. The defendant now argues that his trial counsel was ineffective for representing him under an actual conflict of interest, and the conflict prevented trial counsel from advocating an alternative defense.

¶ 35    *Res judicata* applies when (1) a court of competent jurisdiction renders a final judgment on the merits (2) that is between the same parties and (3) involves the same cause of action. *People v. Nichols*, 2021 IL App (2d) 190659, ¶ 16. Because the defendant did not bring an ineffective assistance of counsel claim on direct appeal, no final judgment on the merits has been rendered by any court. As such, his claim is not barred by *res judicata.*

¶ 36    The defendant filed previous postconviction petitions. In the first, the defendant alleged ineffective assistance of trial counsel, and the trial court dismissed this petition. On appeal, this court found that this claim could have been raised on appeal, and as such the defendant forfeited the claim. *Canizalez II*, 2015 IL App (4th) 130680-U, ¶ 30. The trial court allowed the defendant to file a successive postconviction petition, alleging that his direct appeal was ineffective which caused the forfeiture of nonfrivolous claims. The trial court *sua sponte* found it erred in granting the defendant leave to file his successive petition. Ultimately, this court reversed the trial court and remanded the petition for further proceedings on the claims of the petition. While these petitions did contain claims of ineffective assistance of counsel, this court directed further proceedings on the claims, and the defendant was granted permission to proceed with successive petitions due to establishing "cause and prejudice." *Canizalez III*, 2020 IL App (4th) 180212, ¶ 34. Because of the procedural history of this case, no final judgment on the merits has been given on the claims.

¶ 37    A defendant, however, must generally raise a constitutional claim alleging ineffective assistance of counsel on direct review or risk forfeiting the claim. *People v. Veach*, 2017 IL 120649, ¶ 47. Issues that could have been raised and considered on direct review are deemed

procedurally defaulted. *People v. Ligon*, 239 Ill. 2d 94, 103-04 (2010). It is not the function of collateral review to consider claims that could have been presented on direct review. *People v. Thomas*, 38 Ill. 2d 321, 323 (1967). Procedural default does not, however, preclude a defendant from raising an issue on collateral review that depended upon facts not found in the record. *Id.* at 323-24.

¶ 38    In the present case, the defendant's petition relied upon information not included in the original appellate record and thus could not have been raised on direct appeal. During the third-stage evidentiary hearing, the defendant testified to his conversations with trial counsel regarding their meetings, as well as the conversation about joint representation. Trial and appellate counsel both testified to their respective representation of the defendant and trial strategies during the hearing as well. Because additional facts were presented during the evidentiary hearing than appear in the original record, it was proper to bring defendant's claims in his successive postconviction petition.

¶ 39                B. Ineffective Assistance of Trial Counsel

¶ 40                    1. *Communication Issues*

¶ 41    The defendant argues that he did not effectively consent to joint representation because he did not understand the proceedings or his meetings with trial counsel due to the insufficient translator used by trial counsel. A valid claim of ineffective assistance of counsel is established where counsel failed to effectively communicate with a defendant. *People v. Valladares*, 2013 IL App (1st) 112010, ¶ 59. During the evidentiary hearing, the defendant testified that he did not understand the translator provided during meetings with trial counsel and that he tried to inform trial counsel about this issue, but trial counsel did not do anything.

15

¶ 42 Trial counsel testified that the Spanish translator used for client meetings was a college student who was raised in a Spanish bilingual home. Although he did not have any certifications, trial counsel stated that the defendant appeared to be effectively communicating with the translator and did not attempt to convey his confusion. Further, an official court Spanish translator was present for all court proceedings. The defendant never expressed any confusion during these hearings. The trial court found the defendant's testimony of events, particularly in regard to the communication issues, to be "not credible." During the jury waiver hearing, the trial court told the defendant, "What I'm going to do today then is explain to each of you gentlemen what your choices are with respect to a trial, and then I will give you a chance to talk further with [trial counsel] and decide how you wish to present the evidence in that trial." The trial court informed the codefendants of the charges against them, the possible penalties, and their trial rights. The following conversation occurred, with the official court translator responding on behalf of the defendant:

"THE COURT: And [Defendant], sir, have you had enough time to discuss this with your attorney?

THE TRANSLATOR: Yes.

THE COURT: And, sir, did you have any questions about this?

THE TRANSLATOR: No.

THE COURT: And *** is that what you wish to do is ask for a judge to hear the evidence and give up your right to a jury trial?

THE TRANSLATOR: Yes.

* * *

16

THE COURT: And [Defendant], sir, has anyone forced you or threatened you or coerced you in any way to make you agree to do this, sir?

THE TRANSLATOR: No.

THE COURT: And had anyone promised you that anything would happen if you did this?

THE TRANSLATOR: No.

THE COURT: And, sir, are you doing this of your own free will then? Is it voluntary?

THE TRANSLATOR: Yes."

¶ 43    During the third-stage evidentiary hearing, the defendant stated that he presently understood what was happening but previously did not understand the student interpreter provided by trial counsel or any court-provided translators. However, the hearing transcripts show the defendant responding to the trial court's questions, and that the defendant had no questions. The trial court permitted trial counsel and the defendant to utilize the court translators prior to the hearings for any questions or issues before the hearings began. As such, the trial court found that there were no communication defects between the defendant and trial counsel. In its written order, the trial court stated, "Even though the Court finds no constitutional defects in the communications between [the defendant] and counsel, the trial court's colloquies would have cured any such defects." Upon review of the record, this court does not find any error that is clearly evident, plain, or indisputable in that finding. Thus, the trial court's finding that the defendant did not receive ineffective assistance because of communication issues was not manifest error.

17

¶ 44                                    2. *Conflict of Interest*

¶ 45    The defendant claims the evidence established that he was denied his constitutional right to conflict-free representation when trial counsel jointly represented the defendant and codefendant. The sixth and fourteenth amendments to the United States Constitution guarantee the right to effective assistance of counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 343-44 (1980); *People v. Vriner*, 74 Ill. 2d 329, 337 (1978). A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation. *People v. Hernandez*, 231 Ill. 2d 134, 142 (2008); *People v. Morales*, 209 Ill. 2d 340, 345 (2004). Such representation means assistance by an attorney whose loyalty to his or her client is not diluted by conflicting interests or inconsistent obligations. *People v. Mahaffey*, 165 Ill. 2d 445, 456 (1995); *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988).

¶ 46    This court has recognized a category of conflicts of interest which generally, although not exclusively, involve joint or multiple representation of codefendants. *Spreitzer*, 123 Ill. 2d at 17. The joint representation of criminal codefendants is not *per se* violative of the constitutional guarantee of conflict-free representation. *Vriner*, 74 Ill. 2d at 340. There is always the possibility that the interests of codefendants may diverge. *Cuyler*, 446 U.S. at 348; *Vriner*, 74 Ill. 2d at 340. However, this court has consistently held that a conflict of interest is not inherent in joint-representation situations merely by virtue of such representation. *Vriner*, 74 Ill. 2d at 340 (collecting cases).

¶ 47    To prevail on a claim of ineffective assistance of counsel because of joint representation of criminal codefendants by a single attorney, a defendant must show that an actual conflict of interest manifested at trial. *People v. Taylor*, 237 Ill. 2d 356, 375-76 (2010). "[Defense] strategy in multiple representation situations often will invite, through hindsight, conceived notions that the

18

representation adversely affected the interests of at least one defendant at some point in the trial process." *Vriner*, 74 Ill. 2d at 342. A defendant must point to a specific defect in his counsel's strategy, tactics, or decision-making attributable to the conflict to show that an actual conflict manifested at trial. *Spreitzer*, 123 Ill. 2d at 18; *Taylor*, 237 Ill. 2d at 375-76.

¶ 48     In the defendant's petition, "Claim 4" states that trial counsel never met individually with the defendant to discuss "the potential trial strategy of inculpating [the codefendant] based on [his] statement that he was receiving financial compensation for driving the car and that [the defendant] was not." Further, trial counsel's representation of both codefendants prevented him from "rigorously investigating" the possibility that the codefendant was culpable or emphasizing this difference to the court on the defendant's behalf. During the third-stage evidentiary hearing, postconviction counsel focused on the defendant's lack of knowledge about the payment his codefendant received for driving the vehicle in support of the petition.

¶ 49     During the stipulated bench trial itself, trial counsel argued that the State did not prove beyond a reasonable doubt that the codefendants had the intent to deliver, a required element of the offense. The trial court reviewed the stipulated facts, prior testimony from Trooper Owen, footage of the traffic stop, and arguments from counsel. The trial court stated that it "considered the evidence separately as to each Defendant." The trial court recounted the information included in the stipulated facts and from the suppression hearing, and when describing the codefendant's interviews, the trial court stated, "[The codefendant] claimed that [the defendant] did not know about the $4000 and was just along for the ride, although he considered giving him half of that for coming with him." In regard to the defendant, the trial court stated that Trooper Owen found the defendant to be visibly shaking and extremely nervous. Trooper Owen asked him questions in Spanish, to which the defendant did not respond at all. When the defendant exited the vehicle, he

19

stared up at the sky with his arms crossed, which the trial court found to be "a very unusual response for an innocent passenger, and the Court can impute guilty knowledge and awareness from his reaction to the trooper's initial approach."

¶ 50 After the third-stage evidentiary hearing, the trial court denied postconviction relief. In its holding, the trial court found that the defendant failed to prove any defect in trial counsel's strategy attributable to the conflict of interest. Specifically, the trial court stated as follows:

"To the contrary, [the defendant] claims that the critical piece of evidence that trial counsel should have pursued was [the codefendant's] statement at the time of arrest that he had received $4,000 to drive the car and that [the defendant] did not know about that payment. However, it was trial counsel's joint representation that facilitated this statement in being presented to the trial court. The third stipulation presented to the trial court *** contained [the codefendant's] statement. *** In any event, trial counsel cannot be said to have been deficient in pursuing a trial strategy that allowed for the admission of the very information [the defendant] wanted to be presented."

¶ 51 Contrary to the trial court's conclusions, the defendant argued, in his petition and during the evidentiary hearing, that the defect in his trial counsel's strategy attributable to the conflict was the fact that trial counsel "failed to investigate" the codefendant's statement that the defendant was unaware of the compensation for the trip. After the stipulated bench trial, the trial court said that it considered the evidence as to each individual defendant, that the defendant was unaware of the payment, but found the defendant guilty based on the defendant's individual actions during the stop and search of the vehicle. During the third-stage evidentiary hearing, the trial court heard from the defendant that he felt as though the case would have turned out differently if the trial court had known about the codefendant's statement that the defendant did not know about the payment. He

20

stated that this was the main piece of evidence that was "left out." Postconviction counsel argued that because the defendant did not know about the payment, an antagonistic defense existed between the defendants.

¶ 52    The defendant failed to demonstrate how an actual conflict of interest adversely affected trial counsel's performance at the defendant's trial. The defendant claimed that trial counsel did not include the evidence that the defendant was unaware of the payment made to his codefendant during the trial. The third stipulation, however, included the codefendant's interview, stated that the defendant was unaware of the payment to the codefendant, and that the codefendant did not know the defendant to be involved in any type of narcotics. The trial court considered the very statement the defendant wished to be considered during the stipulated bench trial and expressly stated that in its findings.

¶ 53    During the evidentiary hearing, the trial court focused on the fact that it was aware of the codefendant's statement and considered that when finding the defendant guilty. Despite representation of both defendants, trial counsel included the very information the defendant argued should have been presented to the trial court. Ultimately, the trial court found that the defendant did not show that a specific defect in trial counsel's strategy, tactics, or decision-making attributable to the conflict and this court does not find any error that is clearly evident, plain, or indisputable in that finding. Therefore, we find that the trial court's finding that the defendant did not receive ineffective assistance of counsel based on a potential conflict was not manifest error.

¶ 54              C. Ineffective Assistance of Appellate Counsel

¶ 55    The defendant also argues that appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on direct appeal. During the evidentiary hearing, appellate counsel testified that the law at the time of filing the defendant's brief in 2010 was different than

at the time of the hearing in 2021. See *Veach*, 2017 IL 120649, ¶¶ 31-47 (overturning cases in which appellate courts declined to consider ineffective assistance of counsel claims on direct appeal and finding that ineffective assistance of counsel claims should be brought on direct appeal where the record is adequate). The trial court asked the defendant's postconviction counsel if the law at the time of filing the brief undermined any ineffective assistance of counsel claim against appellate counsel, and postconviction counsel stated, "I would concede that it does." The trial court found this argument to be abandoned, but the defendant argues it again on appeal.

¶ 56    A defendant who contends that appellate counsel rendered ineffective assistance by failing to argue an issue must show that the failure to raise that issue was objectively unreasonable and that the decision prejudiced the defendant. *People v. Easley*, 192 Ill. 2d 307, 328-29 (2000). Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *Id.* Accordingly, unless the underlying issues are meritorious, the defendant has suffered no prejudice from counsel's failure to raise them on appeal. *People v. Childress*, 191 Ill. 2d 168, 175 (2000). Here, appellate counsel determined that an ineffective assistance of counsel claim would not have merit based on the controlling precedent in effect at the time of the defendant's direct appeal and, as such, we find that appellate counsel was not ineffective for failing to raise the claim on direct appeal.

¶ 57    We have reviewed the record on appeal and considered the defendant's issues in their entirety. We have not found any error that is clearly evident, plain, or indisputable in the trial court's findings. Accordingly, we find that the trial court's judgment denying the defendant's postconviction petition was not manifestly erroneous.

¶ 58                            III. CONCLUSION

¶ 59    For the foregoing reasons, we affirm the judgment of the trial court denying the defendant's

third-amended successive postconviction petition.


¶ 60    Affirmed.